# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

SA'AD EL-AMIN,

**Plaintiff,**

v.                                                          **Case No. 3:12CV538**

COMMONWEALTH OF VIRGINIA, et al.,

**Defendants.**

## MEMORANDUM IN SUPPORT OF COMMONWEALTH OF VIRGINIA, GOVERNOR McDONNELL AND SECRETARY OF THE COMMMONWEALTH KELLY's MOTION TO DISMISS

NOW COME the Defendants, the Commonwealth of Virginia, Robert F. McDonnell, Governor of the Commonwealth of Virginia, and Janet Vestal Kelly, Secretary of the Commonwealth of Virginia, by counsel, and pursuant to Rule 12(b)(1) and Rule 12(b)(6), Fed. R. Civ. P., respectfully move this Court to dismiss the Complaint filed in this case. In furtherance of said motion, the Defendants state as follows:

### STATEMENT OF THE CASE AND FACTUAL ALLEGATIONS

The Plaintiff, Sa'ad El-Amin (hereafter "El-Amin") has filed a Complaint against the Defendants, the Commonwealth of Virginia (hereafter "Commonwealth"), Robert F. McDonnell, Governor of the Commonwealth of Virginia (hereafter "Governor"), and Janet Vestal Kelly, Secretary of the Commonwealth of Virginia, (hereafter "Secretary").[1] Insofar as relevant to the Commonwealth, Governor and Secretary, El-Amin challenges

---

[1] El-Amin also names J. Kirk De Courcey Showalter, Registrar for the City of Richmond as a Defendant. Showalter is not a State employee and will be filing separate responsive pleadings.

Virginia's right to disenfranchise him as a result of his felony conviction. He also challenges the process by which Virginia restores the right to vote to those convicted of felonies. El-Amin brings these claims pursuant to The Voting Rights Act of 1965, 42 U.S.C. §§ 1973 et seq, and 42 U.S.C. § 1983.[2] El-Amin seeks declaratory and injunctive relief as well as attorneys' fees against the Defendants.

In his Complaint, El-Amin alleges "[t]here are 378,000 citizens in Virginia who are barred from exercising their right to vote due to a felony conviction." Complaint, ¶18. "African-Americans make up more than 50% of the state's disenfranchised population, despite being only 20% of the population." Complaint, ¶ 68.[3] He also contends that while the majority of convicted felons were persons of African descent [El-Amin provides no date or period of time for this assertion] virtually all of the persons who participated in the rebellion were White. Complaint, ¶ 70 - 71. El-Amin also provides a historical - albeit incomplete - overview of the development of Article II, § 1 of the Virginia Constitution, including its revisions in 1851, 1870 and 1902. Complaint, ¶¶ 28 - 33. He then describes Virginia's role during the Civil War. Complaint, ¶¶ 34-40. He goes on to describe the events that occurred during the constitutional convention of 1867

---

[2] While El-Amin cites to The Voting Rights Act of 1965 as a basis for his claims, other than referring generally to §§ 1973, et seq. of the Act, see Complaint, ¶ 8, and indicating he seeks attorneys' fees pursuant to §§ 1973(l)(e), he neglects to cite to any particular provision in support of his claims. Nor does he allege any facts, or articulate with the necessary specificity, how the facts establish that the instant Defendants have violated the Act. Consequently, El-Amin has failed to adequately state a claim under the Act and this Court should dismiss any claim brought pursuant to the Act.

[3] As with his other factual and historical assertions, El-Amin makes no effort to cite to governmental statistics, learned treatises, recognized sources, or the like to establish the bona fides of what he alleges. This Court should be cautious about accepting these "facts" at face value.

-1868, and how insofar as relevant to this case, only the disenfranchisement of felons provision survived as part of the Constitution of 1870. Complaint, ¶¶ 49 -56.

El-Amin then notes the enactment of the 15th Amendment to the Constitution of the United States, and launches into a description of various laws and provisions, which were passed by the Virginia Legislature to "deprive black men of the opportunity to vote . . .." Complaint, ¶¶ 57 - 60, 64. He ends his historical review by referencing Carter Glass, who had been elected to the Senate of Virginia in 1899, and who had been a delegate to the Virginia Constitutional Convention of 1901 -1902. Insofar as Mr. Glass is concerned, we are told that he purportedly "stated without equivocation that Article II would not automatically deprive white men of the ballot, but was intended to drastically reduce the Black vote, estimating a four-fifths reduction in the Black vote, which he declared was the purpose of this Convention." Complaint, ¶ 62. Finally, El-Amin notes that while convicted felons have their right to vote forfeited, those granted immunity from prosecution, unidentified co-conspirators, and those who obtain favorable plea agreements escape disenfranchisement. Complaint, ¶ 75.

For the reasons stated herein, this motion to dismiss should be granted.

## I.    Motion under Fed. R. Civ. P. 12(b)(1)

Preliminarily, this Court has an affirmative obligation to determine whether it has subject matter jurisdiction over this controversy. It is the burden of the party claiming subject matter jurisdiction to demonstrate that it exists. *See, e.g., McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178 (1936). In ruling upon a Motion to Dismiss filed under Fed. R. Civ. P. 12 (b)(1) challenging subject matter jurisdiction, this Court may take judicial notice of matters properly subject to judicial notice pursuant to Rule

201, Fed. R. Evid., *Field Auto City, Inc. v. GMC*, 476 F. Supp. 2d 545, 560 (E.D. Va. 2007), and matters of public record, *Mitchell v. Loven*, 2010 U.S. Dist. LEXIS 91494 (W.D.N.C. Aug. 31, 2010).  The Court may also consider evidence beyond the pleadings, *Land v. Dollar*, 330 U.S. 731 (1947), and may weigh conflicting evidence and resolve any dispute. *Id.*

## II.   Motion under Fed. R. Civ. P. 12(b)(6)

For purposes of ruling on a Motion to Dismiss brought under Fed. R. Civ. P. 12(b)(6), a plaintiff "must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344-45 (4th Cir. 2006).  Further, this Court must accept, solely for the purpose of deciding the motion, the truth of all well-pled factual allegations and fair inferences arising therefrom. *Mylan Labs Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  This Court, however, is under no obligation to accept conclusory allegations regarding the legal effect of the facts alleged. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995).  This Court is also not required to conjure up allegations, which have not been pled, or accept as true allegations that are inconsistent with the facts that are pled.  Further, this Court is not required to accept as true allegations, which are inconsistent with judicially noticed facts.  5A Wright & Miller, Federal Practice and Procedure § 1357, pp. 311-20 (1990). This  Court may also consider materials incorporated by reference into the Complaint. *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011).

A. **Virginia's Constitutional and Statutory Scheme.**

The Constitution of Virginia states, "[n]o person who has been convicted of a felony shall be qualified to vote unless his civil rights have been restored by the Governor or other appropriate authority." Va. Const. art. II, § 1.

The Constitution goes on to provide "[t]he Governor shall have power to . . . to remove political disabilities consequent upon conviction for offenses committed prior or subsequent to the adoption of this Constitution . . . ." Va. Const. art. V, § 12.

In addition, the *Code of Virginia,* states:

> The Director [of the Department of Corrections] shall assist the Secretary of the Commonwealth in the administration of the process established by the Governor for the review of applications for restoration of civil rights.
>
> To promote the efficient processing of applications to the Governor, the Secretary of the Commonwealth shall maintain a record of the applications for restoration of rights received, the dates such applications are received, and the dates they are either granted or denied by the Governor. The Secretary shall notify each applicant who has filed a complete application that the complete application has been received and the date the complete application was forwarded by the Secretary to the Governor. Such complete application shall be forwarded by the Secretary to the Governor within ninety days after receipt of the application.

*Code of Virginia,* § 53.1-231.1[4]

The actual process by which a convicted felon may seek restoration of his/her rights is found on the Secretary of the Commonwealth's web page referenced in El-Amin's Complaint at ¶ 20, and found at http://www.commonwealth.virginia.gov/. Copies of the relevant web pages are attached to this memorandum as Group Exhibit 1A.

---

[4] Section 53.1-231.2, *Code of Virginia,* sets up an alternate, albeit similar process by which a felon can seek restoration of his rights. While originating with a Circuit Court, rather than the Secretary's office, the process is in many respects similar to that noted above, and ultimately also requires the approval of the Governor.

**B.**     **El-Amin Lacks Standing to Bring Suit Challenging Virginia's Scheme For Reinstatement in Count II and III, and His Claims are not Ripe.**

In addition to challenging Virginia's right to disenfranchise him as a result of his

felony conviction, El-Amin also challenges Virginia's statutory mechanism by which a

convicted felon can seek restoration of his rights. Complaint, ¶¶ 24 - 26, 79 - 87. El-

Amin challenges the restoration process in Counts II and III of his Complaint. Insofar as

the restoration of rights process is concerned, El-Amin points to some perceived

infirmities in the process. El-Amin alleges that the Governor has not published any

specific criteria used to decide an application to restore a felon's rights, Complaint, ¶¶ 25,

85; nor are there any "rules, standards, or procedures, except the requirement to make a

written application for the restoration of rights . . . ." Complaint, ¶ 79; and that the

Governor has total and complete discretion as to whether or not he approves the applicant

and restores his/her voting rights . . . ." Complaint ¶ 85.

As far as these claims are concerned, however, El-Amin lacks standing to bring

this challenge, and his challenge is not ripe for adjudication.

Before a federal court can decide the merits of a claim, the claim must invoke the

jurisdiction of the court. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Article III of

the Constitution of the United States, gives federal courts jurisdiction only over "cases

and controversies." U.S. Const. art. III, § 2, cl. 1. *Marshall v. Meadows*, 105 F.3d 904,

906 (4th Cir. 1997). "To that end, '[t]he Supreme Court has developed a number of

constitutional justiciability doctrines . . . including . . . the doctrines of standing [and]

ripeness . . . ." *Id.* (quoting *United States v. McClure*, 241 F. App'x 105, 107 (4th Cir.

2007). The standing and ripeness doctrines are closely related, as they are both "simply

subsets of Article III's command that the courts resolve disputes, rather than emit random

advice." *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991).  As was observed in

*Catalina Mktg. Corp. v. Kappos*, 2011 U.S. Dist. LEXIS 121259, 9-10 (E.D. Va. Oct. 19,

2011) "[p]laintiff's personal stake in the outcome (standing) is directly limited by the

maturity of the harm (ripeness)" citing *Doe v. Duling*, 782 F.2d 1202, 1206 n.2 (4th Cir.

1986).  "[B]oth doctrines require that those seeking a court's intervention face some

actual or threatened injury to establish a case or controversy." *Id.*

The doctrine of standing identifies disputes appropriate for judicial resolution.

*Valley Forge Christian College. v. Ams. United for Separation of Church and State,* 454

U.S. 464, 471-76 (1982).  A claim is justiciable if the "conflicting contentions of the

parties . . . present a real, substantial controversy between  parties having adverse legal

interests, a dispute definite and concrete, not hypothetical or abstract." *Miller v. Brown,*

462 F.3d 312, 316 (4th Cir. 2006)(Citations omitted). Standing contains three elements.

A claimant must demonstrate (1) an "injury in fact"; (2) a "causal connection between the

injury and the conduct complained of," such that the injury is "fairly traceable" to the

defendant's actions; and (3) a likelihood that the injury "will be redressed by a favorable

decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  *See also Benham

v. City of Charlotte*, 635 F.3d 129, 134-135 (4th Cir. 2011).

Insofar as standing is concerned, in *Doe v. Va. Dep't of State Police*, 2011 U.S.

Dist. LEXIS 68939, 4-5 (E.D. Va. June 27, 2011), the Plaintiff, a convicted sex offender,

was prohibited by Virginia law from "entering and being present, during school hours

and during school-related and school-sponsored activities, on any property that is a public

or private school or a child daycare center." *Id.* at *3.  The Plaintiff, however, was

permitted to seek a relaxation of this prohibition, by filing a petition with the circuit

7

court, and notifying the Commonwealth's Attorney, and either the school administrator

or proprietor of the child daycare center.  The Plaintiff, however, did neither and instead

filed her suit raising several constitutional challenges to her status and the process

available to seek relief from the prohibition.

The district court *sua sponte* addressed whether the Plaintiff had standing to bring

the action, and whether the matter was ripe for adjudication.  In holding that she lacked

standing, the district court stated:

> she lacks an injury in fact at this time.  The future impact of the law on her
> is hypothetical.  Whether the Court can provide meaningful relief, and
> what such relief might be, depends on how the circuit court, Board, and
> the local churches react to a request for permission to enter their property.
> It is possible that the plaintiff may have standing in the future, but it is also
> possible that she will not.  As such, the plaintiff lacks standing under these
> circumstances.

*Id.* at *19.

So too in *Lexon Ins. Co. v. BMR Funding, LLC,* 2010 U.S. Dist. LEXIS

71079, 1-2 (E.D.N.C. July 14, 2010), Lexon as surety issued two performance

bonds on behalf of Town & Country, principal, related to development of a

subdivision.  The County of Brunswick, North Carolina,  was named as obligee.

The bonds secured Town & Country's construction of infrastructure

improvements associated with the subdivision.  While some of the proposed lots

sold, the remaining land was foreclosed upon, and BMR became the new owner.

The County declared Town & Country in default and the County filed suit against

Lexon seeking payment for the remaining value on the bonds.  Lexon then filed

suit against BMR requesting that BMR contribute, on a pro rata share, to the costs

of any improvements, payments, or other actions that would be required by the

County or as a result of the ongoing matter between the County and [Plaintiff] as
to the lots not sold by Town & Country and subsequently purchased by BMR at
foreclosure.

In denying Lexon's claim, the district court held that it lacked standing
because it could not demonstrate that it had been injured.

> Plaintiff [Lexon] cannot show it has suffered an injury in fact traceable to
> Defendants' [BMR's] conduct. Plaintiff has not completed the
> infrastructure improvements in the subdivision, nor has any other party.
> Thus, no unjust benefit, upon which Plaintiff bases its complaint, has
> accrued to Defendants, nor is such benefit in any way imminent."

Id. at * 7. *See also Benham v. City of Charlotte*, 635 F.3d at 136 ("The Plaintiffs simply
cannot complain that streets in Charlotte were not closed for their event when they did
not request any street closures.")

Ripeness, on the other hand, "concerns the 'appropriate timing of judicial
intervention.'" *S.C. Citizens for Life, Inc. v. Krawcheck*, 301 Fed. Appx. 218, 220-21 (4th
Cir. 2008)(citations omitted).  The inquiry is designed to prevent judicial consideration of
a dispute "until a controversy is presented in clean-cut and concrete form." *Miller v,
Brown*, 462 F.3d at 318-19. (citation and internal quotation marks omitted).  To
determine whether a claim is ripe, a court must evaluate (i) "the fitness of the issues for
judicial decision" and (ii) "the hardship to the parties of withholding court
consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).  "[A] claim is not
ripe for adjudication if it rests upon contingent future events that may not occur as
anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300
(1998); *Charter Federal Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th

Cir.1992); *cert. denied*, 507 U.S. 1004 (1993). The burden of proving ripeness falls on the party bringing suit. *Miller v, Brown*, 462 F.3d at 319.

Insofar as ripeness is concerned, once again in *Doe, supra,* the district court also found that Plaintiff's claims were not ripe. The district court stated

> [t]he plaintiff has not applied for a state court order allowing her to enter forbidden areas. Obtaining the state court order is a sine qua non of entry into schools and daycare centers. Until the Virginia circuit court allows entry, neither the Board nor the proprietor of a daycare can admit the plaintiff onto its property. The Court has no idea how the circuit court would rule on the plaintiff's hypothetical petition.

*Doe,* 2011 U.S. Dist. LEXIS at *17.

Similarly, in *Murray v. Johns*, 2012 U.S. Dist. LEXIS 100840, 1-4 (E.D.N.C. July 19, 2012) a federal prisoner brought a habeas corpus action challenging the Bureau of Prisons' (BOP) anticipated denial of his request to serve the last twelve months of his incarceration in a residential re-entry center. Significantly, while the prisoner anticipated a negative determination by BOP on this point, the time for the BOP to assess the prisoner's eligibility to be transferred to such a facility had not yet been reached. In holding that the claim was not ripe, the district court stated "[s]ince the BOP has taken no action against Murray with respect to his pre-release RRC placement eligibility, and because it is uncertain whether he will be placed in an RRC at all . . . the court finds that Murray's claim is not ripe for review." *Id.* at *3.

Understanding why El-Amin lacks standing to bring this action challenging the restoration process, and his challenge to restoration is not ripe at this time, requires an

appreciation of certain underlying facts.[5] First, El-Amin concedes he is a convicted felon. Complaint, ¶ 3. He also identifies the crime for which he was convicted as a violation of 18 U.S.C. § 371, conspiracy to attempt to evade or defeat tax. Complaint, ¶ 3. Significantly, however, El-Amin alleges "[t]he fact that El-Amin's felony conviction is not included as one of the offenses requiring either a two or five-year application makes him ineligible for reinstatement of his rights in Virginia." Complaint, ¶ 83. His assertion is incorrect. While El-Amin's crime is not specifically listed on the Secretary's web page, *see* Group Exhibit 1A, that fact is not dispositive. The Secretary's web page defines the courts in which convictions may arise, and that felons convicted in those courts may seek restoration. The web page states, "[i]n order to be eligible for restoration of rights by the Governor, an applicant must . . have been convicted of a felony in a Virginia court, **a U.S. District court** or a military court." (Emphasis added). Group Exhibit 1A, pp. 3; *see also* pp. 8, 10, 12; Complaint, ¶ 19. It also lists certain offenses that are ordinarily understood to be federal crimes.[6] El-Amin's tax conspiracy conviction is one that arose in a federal district court, Complaint, ¶ 10. He is eligible to seek restoration of his rights via the procedures outlined on the Secretary's web page. *See* Affidavit of Secretary Janet Vestal Kelly, attached as Exhibit 1.

---

[5] Some of the facts are alleged in the Complaint. Some are contained in Exhibit 1, the Secretary's affidavit, and Group Exhibit 1A. The Court can take judicial notice of these facts pursuant to Rule 201, Fed. R. Evid. Moreover, since this issue goes to the jurisdiction of this Court to hear the case, the Court may also consider evidence outside the Complaint without converting this motion to dismiss into a motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P.

[6] For example bank fraud is punishable pursuant to 18 U.S.C. § 1344; mail theft pursuant to 18 U.S.C. § 1708; mail fraud pursuant to 18 U.S.C. § 1341; and credit card fraud pursuant to 18 U.S.C. § 1029.

Moreover, El-Amin's conviction was entered in 2003. Complaint, ¶ 3. He was released from prison in May 2006. Complaint, ¶ 12. He completed his supervised release in August 2009. Complaint, ¶ 13. His crime is not one that is associated with violence or drug trafficking, was not against a minor, and did not involve election fraud, those categories of crimes requiring a five-year waiting period prior to application. Rather, his offense fits the two-year category. *See* Exhibit 1, ¶ 8. As such, El-Amin would have been permitted to apply for restoration two years after the end of his supervised release, or approximately August 2011. Assuming that El-Amin has complied with the other relevant criteria for restoration, i.e., payment of fines and costs, etc., Complaint, ¶ 19, he has been eligible to apply for restoration for the past year. *See* Exhibit 1, ¶¶ 7-8.

Significantly, El-Amin has not alleged that he sought restoration of his rights but was refused. Nor could he do so. *See* Exhibit 1, ¶ 4. At the least, however, El-Amin must try. Absent the submission of an application, and denial of that application, El-Amin has suffered no injury. *Andrew v. Cuccinelli*, 2010 U.S. Dist. LEXIS 127298 (E.D. Va. Dec. 2, 2010)(challenge to the constitutionality of the Virginia Motor Vehicle Transaction Recovery Fund not ripe since plaintiff had not yet obtained a foreign judgment which it could use to seek recovery from the fund).

Because El-Amin has not even applied for restoration of his rights, and what might happen if he did apply is unknown at this time, he lacks standing to bring a challenge to the restoration process in place, and his challenge to that process is not ripe. Counts II and III of the Complaint should be dismissed.

**C.      The § 1983 Claims in Counts I , II, III, and IV, Against the Commonwealth of Virginia, Are Barred by the Eleventh Amendment.**

The Plaintiff alleges that he brings this action against the Defendants pursuant to 42 U.S.C. §§ 1973, *et seq.,* as well as 42 U.S.C. § 1983 (hereafter "§ 1983"). To the extent that El-Amin's action is premised on § 1983, the claims against the Commonwealth cannot lie because the Eleventh Amendment to the Constitution of the United States bars them.

The Eleventh Amendment states that: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although "the Amendment by its terms does not bar suits against a State by its own citizens, the Supreme Court and the Fourth Circuit have consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662 (1974); *Gray v. Laws*, 51 F.3d 426, 430-31 (4th Cir. 1995). "[T]he essence of the immunity is that the State cannot be sued in federal court at all, even where the claim has merit, and the importance of immunity as an attribute of the States' sovereignty is such that a court should address that issue promptly once the State asserts its immunity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 482 n.4 (4th Cir. 2005).

The § 1983 claims against the Commonwealth are barred and should be dismissed.

**D.    The Commonwealth of Virginia Cannot Be Sued in Counts I, II, III and IV, Pursuant to 42 U.S.C. § 1983 As It Is Not A "Person."**

To the extent that El-Amin intends to sue the Commonwealth pursuant to § 1983, in Counts I, II, III, and IV, such action cannot lie for an additional reason.

Section 1983 provides:

> Every **person** who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. (Emphasis added).

The Supreme Court has made clear that § 1983 provides a cause of action for "violations of federal statutory as well as constitutional law." *Maine v. Thiboutot,* 448 U.S. 1, 4 (1980). The Supreme Court of the United States, however, has also said, "[w]e find nothing substantial in the legislative history that leads us to believe that Congress intended that the word 'person' in § 1983 included the States of the Union. And surely nothing in the debates rises to the clearly expressed legislative intent necessary to permit that construction." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 69 (1989).

For the foregoing reasons, the Plaintiff's § 1983 claims against the Commonwealth in this Complaint, should be dismissed.

**E.    The Governor and Secretary are not Proper Parties.**

To the extent that El-Amin challenges the revocation of his right to vote, seeks injunctive relief "enjoining Defendants and their agents, employees, and representatives from denying El-Amin the right to register to vote" and otherwise seeks relief in his

Complaint, in subsections a), b), c),  f), and  g) of his Prayer for Relief, he cannot bring this action against the Governor and Secretary.

Pursuant to the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), injunctive relief against a state officer in his official capacity may be appropriate "if the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)(internal quotation marks and citation omitted). The doctrine, however, also requires a "special relation" between the state officer sued and the challenged statute to avoid the Eleventh Amendment bar. *Ex Parte Young, 209 U.S.* at 157. "The *Ex parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act.'" *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir.2010), citing *Ex parte Young*, 209 U.S. at 155-56. "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) citing *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996).

In the instant case, neither the Governor nor the Secretary have any responsibilities in regards to El-Amin's right to vote having been revoked, with regards to the voter registration process, or with regards to subsections a), b), c),  f), and  g) of his Prayer for Relief.  Neither the Governor, nor the Secretary, consequently, have the requisite relation to these matters necessary to be a proper party in this matter.

Consequently, both the Governor and the Secretary should be

dismissed.

**F.     Count I - Revocation of El-Amin's Right to Vote is Not a Denial of Equal Protection.**

El-Amin claims in Count I of the Complaint, that revocation of his right to vote because he is a convicted felon, amounts to a denial of equal protection pursuant to §1 of the Fourteenth Amendment to the Constitution of the United States.

His challenge appears to be based on two prongs. First that the Virginia Constitutional provision providing for disenfranchisement for a felony conviction, is invalid as applied to him, and second, that it is also discriminatory in its effect.

**1.     The As Applied Challenge - The Text of the Fourteenth Amendment.**

El-Amin's as applied claim that the disenfranchisement of felons is prohibited by the Equal Protection Clause of the Fourteenth Amendment, has been addressed previously by both the Supreme Court of the United States as well as the Fourth Circuit. In both cases, it has been found lacking.

In *Richardson v. Ramirez*, 418 U.S. 24 (1974), the Court was faced with a suit for declaratory relief brought by three felons. They contended that certain of California's constitutional and statutory provisions, which disenfranchised them based on their felony convictions, denied them their equal protection rights under the Federal Constitution. In rejecting the felons' equal protection claim, the Court observed that while § 1 of the Fourteenth Amendment establishes the right to equal protection, "the exclusion of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment." *Richardson*, 418 U.S. at 54. That provision states in relevant part:

> But when the right to vote at any election for the choice of electors . . . is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged,

**except for participation in rebellion, or other crime**, the basis of
representation therein shall be reduced . . . . (Emphasis added.)

In arriving at an understanding of the intended meaning of the phrase "except for

participation in rebellion, or other crime," the Court conducted a historical review of the

events leading up to the passage of the Fourteenth Amendment. The Court observed that

at the time of enactment of the Fourteenth Amendment, "29 States had provisions in their

constitutions which prohibited, or authorized the legislature to prohibit, exercise of the

franchise by persons convicted of felonies or infamous crimes." *Id.* at 48.[7] The Court

also placed great stock on "the understanding of those who adopted the Fourteenth

Amendment, as reflected in the express  language of  § 2 and in the historical and judicial

interpretation of the Amendment's applicability to state laws disenfranchising felons . . .

." *Id.* at 54. in arriving at its conclusion. Ultimately, and due in large part because

disenfranchisement of felons had significant historical underpinnings, the Court

concluded that California could, "consistent with the Equal Protection Clause of the

Fourteenth Amendment, exclude from the franchise convicted felons who have

completed their sentences and paroles." *Id.* at 56.

So too in *Allen v. Ellisor*, 664 F.2d 391 (1980)(4th Cir.) (en banc), vacated on

other grounds, 454 U.S. 807 (1981),[8] the Fourth Circuit was faced with an equal

protection claim brought by a convicted forger who contended that his rights were

---

[7] Those states included Alabama, California, Connecticut, Delaware, Florida, Georgia,
Illinois, Indiana,  Iowa, Kansas, Kentucky, Louisiana, Maryland, Minnesota, Mississippi,
Missouri, Nevada, New Jersey, New York, North Carolina, Ohio, Oregon, Rhode Island,
South Carolina, Tennessee, Texas, Virginia, West Virginia and Wisconsin.

[8] As observed by the Fourth Circuit in *Buckner v. Schaefer*, 1993 U.S. App. LEXIS 9534
*5 n.3 (4th Cir. Apr. 23, 1993), [a]lthough the Supreme Court vacated . . . [the Allen]
decision on mootness grounds, it did not question the validity of the legal reasoning . . . ."

violated when election officials prevented him from registering to vote because of his felony conviction. In reversing the district court's decision finding the South Carolina voter registration statute unconstitutional, the Fourth Circuit observed, "[t]he decision in *Richardson* is generally recognized as having closed the door on the equal protection argument in a challenge to state statutory voting disqualifications for conviction of crime . . . ." *Id.* at 395. The Court went on to observe "the Supreme Court held that, because § 2 of the fourteenth amendment apparently contemplates the disenfranchisement of convicted criminals, the equal protection clause of the fourteenth amendment does not invalidate state laws which deny the ballot to ex-felons." *Id.*

District courts in this Circuit have arrived at the same conclusion. *See e.g. Judd v. State Bd. of Elections*, 2011 U.S. Dist. LEXIS 139993 (E.D. Va. June 20, 2011)("To the extent that Judd seeks injunctive and declaratory relief regarding the alleged unconstitutionality of the laws which disenfranchise convicted felons, this Court is bound by Supreme Court precedent holding otherwise.")(Citation omitted); *Burke v. Pasquotank County Bd. of Elections*, 2010 U.S. Dist. LEXIS 20679 (E.D.N.C. Feb. 12, 2010) ("Provisions in state statutes and constitutions which deny convicted felons the right to vote and hold office do not violate the various rights guaranteed by the Constitution of the United States.")(Citations omitted); *Perry v. Beamer*, 933 F. Supp. 556, 559 (E.D. Va. 1996)("If the Framers of the Fourteenth Amendment had intended to preclude states like Virginia from disenfranchising their convicted felons, they remained silent. Moreover, the Amendment's Framers also remained silent as each of the Confederate States regained their representation in Congress subject to provisions similar, or identical, to those imposed upon Virginia")(Citations omitted).

2.     **El-Amin's Challenge Based On Discriminatory Effect  - *Iqbal* and *Twombly*.**

As to the second prong of El-Amin's challenge, he alleges that the felony disenfranchisement provision of Article II, § 1 was adopted with the intent to discriminate against Blacks, and that it continues to have a discriminatory effect on Blacks to this day.  In support of this theory, he relies on a selective collection of historical "facts" some more than one hundred years old.  He has woven these "facts" loosely together to suggest a pervasive discriminatory underpinning to Article II, § 1. These "facts" can be conveniently divided into two groups: the events surrounding the 1867-1868 constitutional convention and adoption of the Constitution of 1870, Complaint ¶¶ 49 - 55, and Virginia's suppression of the Black vote post-Reconstruction, and events surrounding adoption of the Constitution of 1902, including a comment by Carter Glass. Complaint ¶¶ 57 - 63.  El-Amin argues that these "facts" demonstrate that the felony disenfranchisement provision found in Article II, § 1, was enacted with a discriminatory animus.

To establish an equal protection violation such as presented here, a plaintiff must show discriminatory intent as well as disparate effect.  *Irby v. Virginia State Bd. of Elections*, 889 F.2d at 1352, 1355 (4th Cir. 1989) citing *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265 (1977); *see also Hunter v. Underwood*, 471 U.S. 222, 225 (1985)(Plaintiffs must prove that racial discrimination was a substantial or motivating factor in the adoption of the provision in question).  More particularly, a Plaintiff, must plead sufficient facts to prove discriminatory intent "with more than mere conclusory assertions . . . ." *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003), but also must allege with particularity, actual discriminatory effect.

*Duckworth v. State Admin. Bd. of Election Laws*, 332 F.3d 769, 777 (4th Cir. 2003).

Significantly, however, "a general history of past discrimination cannot, in the manner of

original sin, condemn governmental action that is not itself unlawful." *City of Mobile v.*

*Bolden*, 446 U.S. 55, 74 (1980). Moreover, where legitimate reasons exist for the

challenged action "it far surpasses judicial power to strike down legislative action

because some of the legislators may have been motivated by some impermissible reason

in addition to those acknowledged permissible and legitimate reasons." *South Carolina*

*Education Asso. v. Campbell*, 883 F.2d 1251, 1258 (4th Cir. 1989), citing *Holt v. City of*

*Richmond*, 459 F.2d 1093, 1099-1100 (4th Cir.), cert. denied, 408 U.S. 931 (1972).

### a. *Iqbal* and *Twombly*

In the instant case the Defendants contend that El-Amin's Complaint fails to

allege sufficient facts to establish that the felony disenfranchisement provision was

enacted with a discriminatory intent. An examination of the allegations of the Complaint

is therefore required to determine whether they are sufficient to permit this case to go

forward. Until recently, a Plaintiff such as El-Amin could assert that a Rule 12(b)(6)

motion should be granted only if "it appears certain that the plaintiff cannot prove any set

of facts in support of his claim entitling him to relief." *See, e.g., Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In *Bell Atl. Corp. v. Twombly*, 550 U.S.

544 (2007), however, the U.S. Supreme Court rejected the so-called "no set of facts" test

that had long been the standard for dismissal under Rule 12(b)(6), F. R. C. P. Now,

district courts must examine the complaint to determine whether the plaintiff has alleged

sufficient facts to make a particular cause of action "plausible." Specifically:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
> need detailed factual allegations . . . , a plaintiff's obligation to provide the

'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.

*Twombly,* 550 U.S. at 555 (citation omitted).

Moreover, the "plausibility" standard is not a "probability requirement" but it requires more than a mere possibility that the defendant has acted unlawfully. *Id.* at 556.

In *Ashcroft v. Iqbal,* 556 U.S. 662, 683 (2009), the Supreme Court stated that this plausibility standard applies to "all civil actions and proceedings in the United States district courts." Expanding upon its decision in *Twombly,* the Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Two principles were held to underlie this requirement of facial plausibility. First, not only are legal conclusions not to be accepted as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.,* quoting *Twombly,* 550 U.S. at 555. Moreover, "[w]e are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). *Id.* at 678. "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 686.

The second principle is that the task is "context-specific," meaning that the Court is allowed to impose on the analysis its "judicial experience and common sense." *Id.* at 679. (Citation omitted).

While a court takes all factual allegations made in a complaint as true, and draws all reasonable and favorable inferences from those facts – a court need not, however,

"accept as true unwarranted inferences, unreasonable conclusions, or arguments."
*Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp*, 213 F.3d 175, 180 (4th Cir. 2000)
(Citation omitted)(Emphasis added).  Nor do courts have to accept conclusory factual
allegations devoid of any reference to actual events, *Abdel-Malak v. JP Morgan Chase
Bank, N.A.*, 2011 U.S. Dist. LEXIS 96595 (D. Md. Aug. 29, 2011), citing *United Black
Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

A review of El-Amin's Complaint reveals that it is a hodge-podge of legal
conclusions masquerading as facts and unreasonable inferences that cannot pass muster
under *Iqbal* and *Twombly*. El-Amin's Complaint fails to meet the minimal pleading
requirements and fails to meet the plausibility requirement. El-Amin's assertion that the
disenfranchisement of felons provision found in Article II, § 1, was enacted with a
discriminatory intent is merely a legal conclusion that he draws from his vision of the
historical record. As will be seen, however, his conclusion is belied by historical fact.

### b. El-Amin's Allegations Surrounding the 1867-1868 Constitutional Convention and Adoption of the Constitution of 1870.

There have been seven Constitutions enacted by Virginia. They were adopted in
1776, 1830, 1851, 1870, 1902, 1928 and 1970. *See* 1 A. E. Dick Howard,
COMMENTARIES ON THE CONSTITUTION OF VIRGINIA, 338 - 40 (1974). Most versions
changed in some way the disqualifications that effected citizens' right to vote, while at
the same time identifying those individuals who were eligible to vote.

As to disqualification, before 1830, the only provisions disqualifying a person from voting by reason of a criminal conviction were found in statutes.[9] The first constitutional provisions disqualifying a person from voting because of a criminal conviction were found in the Constitution of 1830.[10] That document disqualified "any person convicted of any infamous offence" along with persons of unsound mind, paupers, non-commissioned officers, and military personnel.[11] "These disqualifications were expanded in the 1851 Constitution to specifically include persons 'convicted of bribery in an election.'"[12] The Constitution of 1870 expanded those disabilities yet again, to include a list of specific offenses including election bribery, embezzlement of public funds, and treason. In addition, the term "felony" replaced the prior "infamous offense" language. While paupers were no longer disenfranchised, those who engaged in duels were added.[13] In the 1902 Constitution those disqualified to vote included idiots, insane persons, paupers, duelers, those having committed a crime, and those who hereafter would commit treason, any felony, bribery, petit larceny, obtaining money or property under false pretenses, embezzlement, forgery, or perjury.[14] The 1928 revision did not

---

[9] *Id.* at p. 344, *see e.g.* "Acts of Assembly, 1705, ch. 2 § 4, 3 Hening 236, 238 . . . which barred a 'recusant convict,' i.e. one convicted of being a recusant or dissenter." *Id.* The 1762 Act of Assembly barred "a recusant, convict, or any person convicted in Great Britain or Ireland, during the time for which he is transported."

[10] Virginia was not alone in this regard. "[Eleven] state constitutions adopted between 1776 and 1821 prohibited or authorized the legislature to prohibit exercise of the franchise by convicted felons. Moreover, twenty-nine states had such provisions when the Fourteenth Amendment was adopted, and the total has now risen to forty-two." *Fincher v. Scott*, 352 F. Supp. 117, 120 (M.D.N.C. 1972), citing *Trop v. Dulles*, 356 U.S. 86, 101 (1958). *See also Allen v. Ellisor*, 664 F.2d 391 at 394 (recognizing the "historic exclusion" of felons from the franchise).

[11] *Id.* at 338, *see* art. III, § 14.

[12] *Id.* at 338, *see* art. III, § 1.

[13] *Id.* at 339, *see* art. III, § 1.

[14] *Id.* at 340, *see* art. II, § 23.

appear to alter disqualifications then in place.[15]  Finally, the 1970 version, eliminated most disqualifications and left only commission of a felony and mental incompetency as the operative criteria.[16]  Significantly, El-Amin also concedes that the felony disqualification provision found in the current Article II, § 1, existed in the 1830, 1851, 1870, and 1902 versions of the Virginia Constitutions.   Complaint, ¶¶ 28 and 32.

With this "disqualification" framework in mind, it is important to also examine who was entitled to vote during this same time period.  It is a historical fact, that during the colonial era, women were not permitted the vote.  So too, "after 1723, free Negroes, mulattoes, and Indians were barred from the franchise."[17] During this period, suffrage was limited to white males over 21 who were freeholders.[18]  The inability to vote - at least insofar as it applied to Blacks - remained the same in the Virginia Constitutions of 1830 and 1851.  Not until the enactment of the 15th Amendment and the Virginia Constitution of 1870, were all males, regardless of color, given the right to vote.[19]  In summary, what the historical record reveals is that disenfranchisement of a voter for conviction of a crime, pre-dated the time when Blacks were even entitled to vote, and that this disqualification, until 1870, only applied to white males.

In the face of this historical backdrop, El-Amin contends that because certain disenfranchisement provisions of the 1870 constitution - which would have deprived White Virginians of the right to vote - were defeated, this Court should conclude that the felony disenfranchisement provision which was included once again in the 1870 version,

---

[15] *Id.* at 340, n.24.
[16] *Id.* at 340 -41, *see* art. II, § 1.
[17] *Id.* pp. 319, *see* Acts of Assembly, 1723, ch. 4, 4 Hening 133-34
[18] *Id.* 337 - 338.
[19] *Id.* p. 338-39.

was re-enacted with a discriminatory purpose. This despite the fact that by then, the

felony disenfranchisement provision had been part of the legal fabric of Virginia for more

than 150 years. No other facts are offered to support this allegation. This cause and

effect theory does not qualify as a valid allegation of fact. One result does not

necessarily flow from the other.

Such a conclusion is simply unsupportable on the facts alleged, and requires a

quantum leap of faith, far greater than permitted by *Iqbal* and *Twombly*.[20]

### c. El-Amin's Allegations Involving Virginia's Suppression of the Black Vote Post Reconstruction, the 1902 Constitution, and Carter Glass.

There is no plausible allegation of fact that could properly impute the intent of the

Constitutional Convention of 1901-02 to the Constitution of 1970 even if we knew for a

certainty exactly what Carter Glass was saying and for whom he was speaking. El-Amin

suggests that Carter Glass' comment in which he purportedly "stated without

equivocation that Article II would not automatically deprive white men of the ballot, but

was intended to drastically reduce the Black vote . . . ." Complaint, ¶ 62, leads to the

inescapable conclusion that the current provision was enacted with a discriminatory

motive. Not only is this implausible but, further undercutting any inference that may be

taken from Glass' purported statement, El-Amin notes that "Glass' statements and

---

[20] This case is decidedly different from *Hunter v. Underwood*, 471 U.S. 222 (1985). In that case, the Supreme Court was faced with reviewing Article VIII, § 182 of Alabama's Constitution of 1901. That section disenfranchised individuals for commission of, among other offenses, "any crime . . . involving moral turpitude." The appellees had been convicted of presenting a worthless check, which qualified as such a crime. In finding that disenfranchisement for a "crime of moral turpitude" was unconstitutional, the Court noted that the adoption of this provision was the product of a constitutional convention admittedly bent on disenfranchising Blacks, and had not been part of the constitution previously. In the instant case, however, El-Amin concedes that commission of a felony has always been a basis for disenfranchisement starting as early as 1830.

25

pronouncements were neither repudiated, corrected nor amended by the executive, legislative or judicial branches of the Commonwealth of Virginia." Complaint, ¶ 63. Of course, this means that El-Amin offers no facts demonstrating who Glass' was speaking for, other than himself.

Moreover, Glass's comment in the Complaint appears to be a paraphrase of what he may have said. It is not a direct quote, it is not dated, and no context for the statement is provided. Hence, we do not know precisely what he meant. Finally, the index to the Debates of the Constitutional Convention show Glass speaking to many issues but voter disqualification is not among them. Of course, the fact that the final revision of the Virginia Constitution took place in 1970 breaks the alleged chain of historical causation. Article II, § 1 was amended at the time to remove the pauperism disqualification. In addition the poll tax requirement was also removed. These provisions were taken out because they conflicted with federal law. *See* 1 A. E. Dick Howard, at 340. It is therefore implausible to allege that the generally constitutional practice of disqualifying felons, which remained in the 1970 version, was intended to violate the United States Constitution or other federal law. Speaking of this period, El-Amin admits as much when he states that "[i]t was not until passage of the Voting Rights Act in 1965 and the subsequent supervision of its protections by the United States Department of Justice that many of the acts of suppression of the Black vote were either **eliminated or neutralized** in Virginia." Complaint, ¶ 65.(Emphasis added).

As noted in *Howard v. Gilmore*, 2000 U.S. App. LEXIS 2680, 2-3 (4th Cir. Va. Feb. 23, 2000)(Unpublished):

> in order to state a claim [under the Fourteenth and Fifteenth Amendment] Howard must establish that the Commonwealth's decision to

> disenfranchise felons was motivated by race . . . [However] [t]he
> Commonwealth's decision to disenfranchise felons pre-dates the adoption
> of both constitutional amendments as well as the extension of the
> franchise to African-Americans . . . Moreover, the Fourteenth Amendment
> itself permits the denial of the franchise upon criminal conviction . . .
> Howard has therefore failed to state a claim under either amendment.

While the *Howard* decision is unpublished, it is consistent with other precedent. *See also*

*Perry v. Beamer*, 933 F. Supp. 556, 559 (1996)("The Commonwealth of Virginia has

long excluded convicted felons from the franchise.").

For the above reasons, El-Amin's Count I § 1983 claim challenging his

disenfranchisement under Article II, § 1, and premised on a violation of the Equal

Protection Clause, fails.

**G.         Count II - The Restoration Process Does Not Violate Substantive or
            Procedural Due Process.**

**1. Substantive Due Process**

El-Amin raises a substantive due process challenge to the restoration of rights

procedures of Article V, § 12, § 53.1-231.1, *Code of Virginia,* and those procedures

found on the Secretary's web page. He contends that the complete absence of "rules,

standards, [and] procedures except the requirement to make a written application for the

restoration of rights is a denial of El-Amin's substantive and due process rights."

Complaint, ¶ 79. In support of this conclusion, he contends "[t]he fact that El-Amin's

felony conviction is not included as one of the offenses requiring either a two or five-year

application makes him ineligible for reinstatement of his rights in Virginia." Complaint,

¶ 83. He concludes, "[t]he ineligibility [of El-Amin to seek restoration] denies El-Amin

his substantive due process rights." Complaint, ¶ 84.

Even assuming that El-Amin has standing to bring this claim, and that it is ripe for adjudication, his substantive law claim fails for a simple reason. His factual conclusion that he cannot seek restoration, is wrong. As noted on the web site of the Secretary and as confirmed by her affidavit, El-Amin's tax conviction falls within the category of offenses included in the two-year application for restoration of rights. Assuming El-Amin has met the other criteria required to qualify for application, he appears eligible to seek restoration at this time. His conclusion that he cannot seek restoration, is merely that, and additionally one that is erroneous. Pursuant to the rationale of *Iqbal* and *Twombly,* this court should not ascribe any legitimacy to that conclusion, and should find El-Amin's substantive due process claim, implausible.

### 2.    Procedural Due Process

Next, El-Amin contends because the Governor has absolute discretion in whether he approves an application for restoration; that the Governor has not published any specific rules, standards, or criteria by which he evaluates an application; and that there is no right of appeal from the Governor's decision, these factors deprive El-Amin of his procedural due process rights. Complaint, ¶¶ 79, 85.

The Due Process Clause of the Constitution of the United States provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law . . . ." Const. Amend. 14, § 1. As noted by the Supreme Court of the United States in *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, (1989) "[w]e examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."

(internal citation omitted).  An individual claiming a liberty or property interest protected by the Fourteenth Amendment, "must have a legitimate claim of entitlement to it." *Id.*

In the instant case, El-Amin characterizes the right at stake as his right to vote, a protected liberty interest. *Barefoot v. City of Wilmington*, 306 F.3d 113, 124 (4th Cir. 2002).  El-Amin, however, confuses the protectable interest he had in that right pre-conviction, with the protectable interest available to him post-conviction.  As a convicted felon, he has lost the right to vote.  "The Fourteenth Amendment itself permits the denial of the right to vote upon criminal conviction . . . [and] [p]rovisions in state statutes and constitutions which deny convicted felons the right to vote . . . do not violate the various rights guaranteed by the Constitution of the United States." *Burke v. Pasquotank County Board of Elections,* 2010 U.S.Dist. LEXIS 20679, * 14 (E.D. N.C. February 12, 2010), citing *Wilson v. Goodwyn,* 522 F. Supp. 1214, 1216 (E.D.N.C. 1981); *Fincher v. Scott*, 352 F. Supp. 117, 119 (M.D.N.C. 1972)("While it may be more desirable from a correctional point of view to give felons the right to vote . . . the states are not constitutionally required to do so."); *Wesley v. Collins*, 791 F.2d 1255, 1261 (6th Cir. Tenn. 1986)("[T]the right of felons to vote is not fundamental.") citing *Owens v. Barnes*, 711 F.2d 25, 27 (3rd Cir. 1982), *cert. denied*, 464 U.S. 963 (1983); *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010)("Having lost their voting rights, Plaintiffs lack any fundamental interest to assert.").

As importantly, there is no requirement, arising out of the protections of the Due Process Clause or any other provision of the federal Constitution, which mandates that Virginia restore El-Amin's right to vote.  As with the authority conferred on the Governor to pardon or to grant clemency, neither of these benefits are constitutionally

mandated. *See Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981)(a felon's

"expectation" of commutation or pardon is "simply a unilateral hope" that does not give

rise to a constitutionally protected liberty interest).

Whatever interest El-Amin may have that is protectable under the Due Process

Clause, insofar as restoration of his rights is concerned, "must be found in statutes or

other rules defining the obligations of the authority charged with exercising clemency."

*Dumschat*, 452 U.S. at 465 (quoting *Leis v. Flynt*, 439 U.S. 438, 443-44 (1979)); *Alston*

*v. Robinson*, 791 F. Supp. 569, 585-86 (D. Md. 1992). "[D]iscretionary statutory

"rights"[however,] do not create liberty or property interests protected by the Due

Process Clause." *Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir. 2002).

Here, the very structure of the procedures which El-Amin challenges, provides the

contours of his rights. Those procedures provide that the Governor has absolute

discretion in determining whether to grant an application for restoration. Neither the

Virginia Constitution, nor the *Code of Virginia,* nor the Secretary's web page sets

conditions on the type, number, or specificity of the criteria the Governor will utilize in

considering an application. The decision whether to approve the restoration of a felon's

voting rights is also envisioned as permitting no right of review by a court. To the extent

that El-Amin seeks restoration of his rights, this procedure is what is due and nothing

more is constitutionally required. There is simply no protectable interest here, and no due

process right to protect it.[21]

El-Amin may not challenge the restoration process pursuant to the protections of the Due Process Clause for an additional reason. As noted earlier in the ripeness section of this memorandum, he has not applied for restoration although it appears he is eligible to apply. "A plaintiff must have taken advantage of the processes that are available to him . . . ." in order to be entitled to complain that the processes are inadequate. *Root v. County of Fairfax*, 371 Fed. App'x 432, 434 (4th Cir. March 26, 2010) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)); *see also Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982) ("[A] state cannot be held to have violated due process requirements when it has made procedural protection[s] available and the plaintiff has simply refused to avail himself of them.").

Whatever can be said of the restoration process that is available, it is nonetheless available. El-Amin cannot complain it is inadequate if he has not even attempted to utilize it.

**H.   Count III - Reinstatement in Virginia is Neither Capricious or Arbitrary.**

To the extent that El-Amin alleges the reinstatement process is capricious and arbitrary, these are legal conclusions, not facts.[22]

---

[21] Significantly, the United States Department of Justice in 1986 and again more recently in 2010, pursuant to 42 U.S.C. 1973(c), approved Virginia's changes to the procedures employed in restoring felon's rights to vote. It is difficult to imagine that the federal government would approve those changes if it believed that revocation of a felon's rights was a constitutional violation, or a violation of the Voting Rights Act of 1965. *See* Group Exhibit 2.

[22] Whether an enactment is arbitrary and/or capricious, is also but another method by which a plaintiff can establish a violation of his substantive due process rights. *See W. Va. CWP Fund v. Stacy*, 671 F.3d 378, 383 (4th Cir. 2011)("A substantive due process violation requires that government have acted in an arbitrary manner.")(Citation omitted); *Struna v. Shepherdstown Planning Comm'n*, 2011 U.S. Dist. LEXIS 24016 (N.D. W. Va.

I.      **Count IV - Disenfranchisement is not a Violation of the Eighth Amendment.**

The Eighth Amendment to the Constitution of the United States provides

"[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and

unusual punishments inflicted." U.S. Const. amend. VIII. "The Eighth Amendment

prohibits punishments that, although] not physically barbarous, involve the unnecessary

and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). "In

evaluating an Eighth Amendment claim, 'no static 'test' can exist by which courts

determine whether conditions of confinement are cruel and unusual, for the Eighth

Amendment 'must draw its meaning from the evolving standards of decency that mark

the progress of a maturing society.'" *Id.* at 346 (quoting *Trop v. Dulles*, 356 U.S. 86

(1958) (plurality opinion)). The Eighth Amendment has application in determining

whether a particular punishment is "graduated and proportional to [the] offense." *See*

*Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973)(Mandatory life sentence as recidivist for

prior convictions of writing an insufficient check, transporting forged checks across state

lines, and perjury, deemed "cruel and unusual" punishment). It also applies to situations

arising after conviction, for example, when the "[f]ailure or refusal to provide treatment .

. . rises to the level of deliberate indifference to serious medical needs of prisoners,

resulting in] the 'unnecessary and wanton infliction of pain,' . . . proscribed by the Eighth

Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). El-Amin suggests that the

protections of the Eighth Amendment apply to his situation and that the amendment bars

Virginia from revoking his right to vote based on his criminal conviction.

---

Mar. 9, 2011)("To prevail on a substantive due process claim, a plaintiff must
demonstrate that an arbitrary and capricious act deprived [him] of a protected property
interest . . . ." The Defendants therefore adopt their arguments from the prior section
dealing with substantive due process here.

In *Trop v. Dulles, supra,* the petitioner was convicted of desertion during wartime, sentenced to prison and given a dishonorable discharge from the Army. Based on that conviction, § 401(g) of the Nationality Act of 1940 decreed the loss of his citizenship. The petitioner appealed to the Supreme Court contending that the loss of citizenship was a violation of his Eighth Amendment rights. The Respondents, on the other hand, argued that § 401(g) was "not a penal law but a regulatory provision authorized by the war power." *Id.* at 97. As noted by the Court, "the Government contends that this statute does not impose a penalty and that constitutional limitations on the power of Congress to punish are therefore inapplicable." *Id.* at 94. The Court, however, observed that it had "been called upon to decide whether or not various statutes were penal ever since 1798 . . . . [e]ach time a statue has been challenged as being in conflict with the constitutional prohibitions against bills of attainder and ex post facto laws." *Id.* at 95. In the context of an Eighth Amendment claim, the Court in *Trop* found that § 401(g) was a penal statute, and consequently, Eighth Amendment prohibitions applied. Significantly, in arriving at that conclusion, the Court also noted that statutes authorizing the loss of the right to vote by a convicted felon were not penal. Rather the Court described them as "a nonpenal exercise of the power to regulate the franchise." *Id.* at 97.

With that in mind, it is not likely that the Eighth Amendment even applies to El-Amin's situation. Virginia's disenfranchisement scheme is neither a punishment, nor a penalty in contemplation of law. Rather, as noted by the Supreme Court in *Trop,* it qualifies as "an exercise of the power to regulate the franchise." Moreover, it is an exercise of power which is authorized by § 2 of the Fourteenth Amendment.

Even if the Eighth Amendment did apply, however, other courts in this Circuit have denied relief in cases presenting the very claim espoused by El-Amin. In *Thiess v. State Administrative Board of Election Laws*, 387 F. Supp. 1038 (D. Md. 1974), several convicted felons brought an action for declaratory and injunctive relief, contending that various Maryland statutes which deprived them of the right to vote violated the Eighth Amendment as well as other constitutional provisions. The district court held "we cannot conclude that such disenfranchisement as has been decreed by the State of Maryland is a punishment so grossly disproportionate to the crime as to be proscribed by the Eighth Amendment." *Id.* at 1042. Similarly, in *Fincher v. Scott*, 352 F. Supp. 117 (M.D.N.C. 1972), a convicted felon brought an action contending that South Carolina's constitution and statutes which disenfranchised convicted felons amounted to "cruel and unusual" punishment. The court found the Plaintiff's argument "without merit." *Id.* at 120

For the foregoing reasons, Count IV of the Complaint in which El-Amin challenges Virginia's disenfranchisement scheme under the Eighth Amendment, must also be dismissed

**J.     Request For Attorneys Fees Pursuant To 42 U.S. § 1988.**

Finally, El-Amin seeks "the award of reasonable attorneys' fees, expenses and costs under 42 U.S.C. §§ 1973)(1)(e) and 1988." Complaint, p. 16.

Insofar as 42 U.S.C. §§ 1973(1)(e) is concerned, as noted earlier, El-Amin has neglected to allege what provisions of the Voting Rights Act are implicated in this case, let alone what facts establish a violation of the Act. To that extent, therefore, he has simply failed to state a cause of action under the Act. Consequently, he is not entitled to recover attorney's fees in this matter pursuant to the Act.

34

Moreover, as a *pro se* litigant in a §1983 action, he is also not entitled to an award of attorneys fees. "The Circuits are in agreement . . . on the proposition that a pro se litigant who is not a lawyer is not entitled to attorney's fees." *Kay v. Ehrler*, 499 U.S. 432, 435 (1991); *accord Bond v. Blum*, 317 F.3d 385, 398-99 (4th Cir. 2003). There is little reason why the same rationale should not also extend to claims for attorney's fees under the Voting Rights Act.

El-Amin's claim for fees should therefore be dismissed as well.

WHEREFORE, for the above entitled reasons, the Defendants respectfully request that this Court dismiss Plaintiff's Complaint.

Respectfully submitted,

COMMONWEALTH OF VIRGINIA
GOVERNOR ROBERT F. McDONNELL
SECRETARY OF THE COMMONWEALTH,
JANET VESTAL KELLY

By: _____/s/_____
George W. Chabalewski
Virginia State Bar Number 27040
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Telephone: (804) 692-0598
Fax: (804) 371-2087
E-mail: gchabalewski@oag.state.va.us

Kenneth T. Cuccinelli, II
Attorney General of Virginia

Wesley G. Russell, Jr.
Deputy Attorney General

Peter R. Messitt
Senior Assistant Attorney General

*George W. Chabalewski
Senior Assistant Attorney General
Virginia State Bar Number 27040

*Counsel of Record

### CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of August 2012, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing to the following:

Sa'ad El-Amin, pro se
24 Overbrook Road
Richmond, Virginia 23222

By: _____/s/_____
George W. Chabalewski
Virginia State Bar Number 27040
Attorney for the above Defendants
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Telephone: (804) 692-0598
Fax: (804) 371-2087
E-mail: gchabalewski@oag.state.va.us

36