IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SA'AD EL-AMIN,

Plaintiff,

v.                                                    Case No. 3:12CV538

COMMONWEALTH OF VIRGINIA, et al.,

Defendants.

## REPLY MEMORANDUM IN SUPPORT OF COMMONWEALTH OF VIRGINIA, GOVERNOR McDONNELL AND SECRETARY OF THE COMMMONWEALTH KELLY's MOTION TO DISMISS

NOW COME the Defendants, the Commonwealth of Virginia, Robert F.

McDonnell, Governor of the Commonwealth of Virginia, and Janet Vestal Kelly,

Secretary of the Commonwealth of Virginia, by counsel, and pursuant to Rule 12(b)(1)

and Rule 12(b)(6), Fed. R. Civ. P., respectfully file their rebuttal memorandum in support

of their motion to dismiss the Complaint filed in this case.[1]

Insofar as El-Amin's Memo in Opposition addresses the arguments raised by the

Defendants, they will respond *seriatim.* As will be seen, however, El-Amin's arguments

---

[1] The Plaintiff, Sa'ad El-Amin (hereafter "El-Amin"), alludes to a motion for summary judgment, which he has filed and which he advises is attached to his memorandum in opposition. *See* Memorandum [in] Opposition to Commonwealth of Virginia, Governor McDonnell and Secretary of the Commonwealth Kelly's Motion to Dismiss [sic] (hereafter "Memo in Opposition p. __"), p. 1; p. 10, fn.8. He also states that he includes in his Memo in Opposition a statement of facts which he contends are not in dispute, and which support such a motion. *See* Memo in Opposition p. 1, fn.1. A motion for summary judgment was not served on these Defendants nor, as of the filing of this rebuttal, has such a motion been filed in the district court. Moreover, nowhere in the Memo in Opposition does a statement of material facts not in dispute appear in that pleading that conforms to the requirements of Local Rule 56(B). These Defendants, therefore, will not respond to any such motion at this time.

are wrong, inapposite, and/or of no real benefit to his cause.  At the end of the day, the Defendants' motion to dismiss should be granted.

Prior to responding to El-Amin's substantive comments, however, a bit of clarification is in order.  El-Amin contends that since the Commonwealth, Governor and Secretary filed documents supporting their motion to dismiss, this warrants his filing documents to support his Memo in Opposition.  El-Amin is incorrect for a number of reasons.

First of all, the Defendants' offered three exhibits in support of their motion to dismiss.  Those items were Exhibit 1 (the Secretary's Affidavit);  Group Exhibit 1A (pages from her web site); and Group Exhibit 2A (Letters sent by the United States Department of Justice in 1986 and 2010, pursuant to 42 U.S.C. § 1973(c), approving Virginia's changes to the procedures employed in restoring felon's rights to vote).

As this Court is well aware, in ruling on a motion to dismiss filed pursuant to Fed. R. Civ. P. 12 (b)(1) this Court may take judicial notice of matters properly subject to judicial notice pursuant to Rule 201, Fed. R. Evid., *Field Auto City, Inc. v. GMC*, 476 F. Supp. 2d 545, 560 (E.D. Va. 2007), and matters of public record, *Mitchell v. Loven*, 2010 U.S. Dist. LEXIS 91494 (W.D.N.C. Aug. 31, 2010).  The Court may also consider evidence beyond the pleadings, *Land v. Dollar*, 330 U.S. 731 (1947), and may weigh conflicting evidence and resolve any dispute.  *Id.*  Insofar as a motion to dismiss brought pursuant to Rule 12(b)(6) is concerned, this Court is also not required to accept as true allegations which are inconsistent with judicially noticed facts.  5A Wright & Miller, Federal Practice and Procedure § 1357, pp. 311-20 (1990).  This Court may also consider materials incorporated by reference into the Complaint. *Katyle v. Penn Nat'l Gaming,*

*Inc.*, 637 F.3d 462, 466 (4th Cir. 2011).

Significantly, each of the Defendants' exhibits falls into one or more of these categories. They are therefore properly a part of the record in this case.

There are no exceptions, however, which permit a Plaintiff to supplement his opposition to a Defendant's motion to dismiss, in the way that El-Amin has done. None of El-Amin's exhibits are responsive to the Defendants' motion to dismiss on the basis of lack of jurisdiction, or to their contention that the Complaint fails to meet the plausibility standard under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009). Rather, they are a collection of materials designed to address the purported merits of his claims, rather than the arguments raised by the Defendants. [2]

El-Amin's exhibits, therefore are improperly before this Court, and should be stricken. So too, any arguments based on those exhibits should be disregarded.

A.    **El-Amin Lacks Standing to Bring Suit Challenging Virginia's Scheme For Reinstatement in Count II and III, and His Claims are not Ripe.**

Significantly, in his Complaint El-Amin alleges "[t]he fact that El-Amin's felony conviction is not included as one of the offenses requiring either a two or five-year application makes him ineligible for reinstatement of his rights in Virginia." Complaint, ¶ 83. In his Memo in Opposition, however, prompted no doubt by the Secretary's declaration that he could have sought reinstatement of his rights to vote at any time since

---

[2] Exhibits 1-3 and 5-8 also suffer from a multitude of evidentiary ills including lack of authentication, relevance, hearsay, hearsay upon hearsay, opinions - both expert and lay - without proper foundation, among other flaws. Exhibit 4 (entitled "List of Pardons, Commutations, Reprieves and Other Forms of Clemency") while it might under other circumstances qualify as a document capable of being judicially noticed, it nevertheless lacks authentication and is irrelevant to the issues at hand.

August 2011,[3] he performs an about face, and now asserts "[t]he argument of defendants that El-Amin lacks standing to challenge the reinstatement process in Virginia might have validity if El-Amin were not already eligible for reinstatement as required by Governor McDonnell's reinstatement policy." Memo in Opposition, p. 24. Without any further explanation of his change of position, he then attempts to explain, albeit unsuccessfully, why the authorities cited by the Defendants have no application to his situation.

In that regard, El-Amin attempts to distinguish the holding in *Doe v. Va. Dep't of State Police*, 2011 U.S. Dist. LEXIS 68939, 4-5 (E.D. Va. June 27, 2011), a case cited by Defendants to demonstrate lack of standing and lack of ripeness, by saying that in the instant case, "the Governor is the only 'game in town' . . . which is not the case in Doe." Memo in Opposition, p. 25. That distinction, however, is irrelevant. In *Doe*, the plaintiff, a registered sex offender, was prohibited from entering on school or daycare center property because of her conviction. She could seek some relief from that prohibition by filing a petition with the circuit court, and notifying the Commonwealth's Attorney, and either the school administrator or proprietor of the child daycare center. She did not file that petition, however, but instead sued in federal court seeking relief. This Court held that she lacked standing to do so, and that her case was not ripe until such time as she had filed the requisite petition with the circuit court. There is no reason not to apply the same rationale and reasoning in *Doe* to the instant case.[4]

---

[3] See Memorandum in Support of Commonwealth of Virginia, Governor McDonnell and Secretary of the Commonwealth Kelly's Motion to Dismiss, pp. 11-12 (hereafter "Memo in Support, p.___").

[4] El-Amin's reliance on *Miller v. Brown*, 462 F.3d 312 (4th Cir. 2006), is misplaced. That case dealt with an challenge to Virginia's Open Primary law under the First Amendment. The Court in that case was faced with balancing when such a claim could be filed so as to not interfere with the running of the primary election. No such timing

El-Amin also contends that his disenfranchisement has caused him to suffer the "injury in fact" which is necessary to confer standing on a litigant. Memo in Opposition, p. 25. El-Amin, however, confuses the injury he sustained by having his right to vote revoked - and which gave him standing to challenge that revocation - with any injury that he might suffer if he were refused reinstatement. That second injury, which is a necessary predicate to attaining standing/ripeness in this suit insofar as the reinstatement provisions are concerned, is absent here.[5] The requirement of standing and ripeness in the instant case, necessitates that El-Amin must have first applied for reinstatement in order to have standing to challenge the reinstatement process itself, or for the issue to become ripe for suit. Nothing less will do.[6]

Because El-Amin has not even applied for restoration of his rights, and he cannot claim any injury from that process, he lacks standing to bring a challenge to the restoration process in place, and his challenge to that process is not ripe. Counts II and III of the Complaint should be dismissed.[7]

---

issues are at play here, and there is no reason for this Court to act swiftly, in the absence of an application by El-Amin for restoration of his rights.

[5] To be clear, the Governor and Secretary do not concede that an actionable injury would lie even if El-Amin's reinstatement request were denied. While he would have standing to challenge the reinstatement provisions at that time, for the reasons stated, he would nevertheless still be unable to prevail on his constitutional challenge.

[6] El-Amin's reference to *Benham v. City of Charlotte*, 635 F.3d 129, 134-35 (4th Cir. 2011), is also of no benefit. While that case discussed the elements of standing in the context of a First Amendment challenge to city ordinances regulating assembly, El-Amin fails to recognize that the Fourth Circuit reversed the decision of the district court, and held that the plaintiff's lacked standing to sue. That decision was based on the finding that the plaintiffs simply had not articulated an injury in fact arising from the denial of a permit to assemble. As noted above, El-Amin still has not articulated an actionable injury stemming from any action by the Governor and Secretary in refusing to grant reinstatement.

[7] El-Amin's suggestion that Defendants' argument is more "akin to a claim of failure to exhaust other remedies . . . ." Memo in Opposition, p. 26, misses the mark. Defendants

**B.** **The § 1983 Claims in Counts I , II, III, and IV, Against the Commonwealth of Virginia, Are Barred by the Eleventh Amendment**

El-Amin's response to the Commonwealth's motion to dismiss on Eleventh Amendment immunity grounds is two-fold. First, because Virginia was not a state in 1870, it cannot assert Eleventh Amendment immunity in a suit brought against it in 2012.

Second, because Virginia failed to enact a constitution in 1870, which contained a clause specifically disenfranchising those who had fought on behalf of the Confederacy, this resulted in an abrogation of the State's Eleventh Amendment immunity. Both arguments are unprecedented. Both fail.

Insofar as the first argument is concerned, the body of case law interpreting Eleventh Amendment immunity has arrived at one unified conclusion. "[T]he essence of the immunity is that the State cannot be sued in federal court at all, even where the claim has merit . . . ." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 482 n.4 (4th Cir. 2005). There is no date stamp on the amendment limiting its application, and no exception carved out for those States that seceded from the Union or which joined after 1870. Suffice it to say, El-Amin's interpretation of Eleventh Amendment jurisprudence is unsupported by any case law. It should be rejected here.

In addition, while it is correctly asserted by El-Amin that Congress may abrogate the State's sovereign immunity, he recognizes that "a plaintiff must [necessarily] bring his/her claims pursuant to a federal statute that specifically abrogates a state's Eleventh Amendment immunity." Memo in Opposition, p. 3. There is only one federal statute

---

contend El-Amin has yet to suffer any injury, either by way of revocation of his right to vote or by failure to have his rights reinstated, which entitles him to challenge the restoration process. Without such an injury, he has not met the standing requirement, nor has his case become ripe.

implicated in this case. That statute is 42 U.S.C. § 1983, the mechanism by which El-Amin has brought his claims.[8] There is simply no question that § 1983 was never intended to abrogate a State's Eleventh Amendment immunity. Any argument to the contrary has no basis in fact or law.

Moreover, whatever may have occurred historically in the process of Virginia re-entering the Union, it is clear that no federal statute was enacted abrogating the Commonwealth's immunity for failure to enact a particular type of constitution, or a constitution containing particular provisions. In fact, one must necessarily conclude that since Virginia was re-admitted to the Union, that the provisions contained in her Constitution at the time of re-admission, must have been acceptable to the Congress.

Therefore, to the extent that El-Amin also asserts Eleventh Amendment abrogation here, he simply fails to identify any legal support for the proposition.[9]

The § 1983 claims against the Commonwealth are barred and should be dismissed.

---

[8] Significantly, while El-Amin initially identified the Voting Rights Act of 1965 as a basis for his suit, *see* Complaint ¶ 8, he has alleged no facts as to any of the Defendants identifying how they violated the Act, has offered no explanation as to which of the Act's provisions are implicated, and has raised no argument suggesting how the Act is germane to this suit.

[9] El-Amin's reliance on *Seminole Tribe v. Fla.*, 517 U.S. 44 (1996), is misplaced. In that case, the Supreme Court ruled that notwithstanding Congress' clear intent to abrogate the States' sovereign immunity in 25 U.S.C.S. § 2710(d)(7), the Indian Commerce Clause, U.S. Const., art. I, § 8, cl. 3, did not grant Congress that power, and therefore 25 U.S.C.S. § 2710(d)(7) did not grant the federal courts jurisdiction over a state that did not consent to be sued. Nothing in that case - or any other case for that matter - has established that 42 U.S.C. § 1983 has properly abrogated the Commonwealth's Eleventh Amendment immunity.

**C.      The Commonwealth of Virginia Cannot Be Sued in Counts I, II, III and IV, Pursuant to 42 U.S.C. § 1983 As It Is Not A "Person."**

El-Amin also asserts that "since Virginia was not a 'state' [in 1870] it cannot seek refuge under the "person" limitations of § 1983." Memo in Opposition, p. 5.

This argument is as fanciful as the one disposed of *supra*. El-Amin offers no historical or legal justification for his position, and none can be found. As noted in the Commonwealth's earlier Memo in Support at p. 14, the Commonwealth of Virginia - and States generally - are not "persons" for purposes of suit under § 1983. El-Amin offers no cogent argument requiring this Court to reconsider that long-standing rule.

For the foregoing reasons, the Plaintiff's § 1983 claims against the Commonwealth in this Complaint, should be dismissed.

**D.      The Governor and Secretary are not Proper Parties.**

El-Amin's response to this argument is less than clear. To the extent that he may have interpreted the Governor and Secretary's position incorrectly, it is worth re-stating here.

The Governor and Secretary are improper parties insofar as El-Amin challenges the revocation of his right to vote. They did not have anything to do with that revocation, nor do they have any power or authority over that subject. They concede, however, that they are proper parties insofar as El-Amin's challenge to the restoration of rights process is concerned.

With that in mind, an *Ex parte Young* action will not lie. Such a complaint is directed at "officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act.'"

*McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir.2010), citing *Ex parte Young*, 209

U.S. at 155-56. "General authority to enforce the laws of the state is not sufficient to

make government officials the proper parties to litigation challenging the law." *Waste*

*Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001), citing *Children's*

*Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996).

Nothing that El-Amin has suggested offers any reason to change that analysis

here.    Consequently, since neither the Governor nor the Secretary have any

responsibilities in regard to El-Amin's right to vote having been revoked, with regard to

the voter registration process, or with regards to subsections a), b), c), f), and g) of his

Prayer for Relief, neither the Governor, nor the Secretary, have the requisite relation to

these matters necessary to be a proper party in this matter.

Consequently, both the Governor and the Secretary should be dismissed as

Defendants, insofar as El-Amin's action is based on the revocation of his right to vote.

**E.      Count I - Revocation of El-Amin's Right to Vote is Not a Denial of Equal**
**Protection.**

In response to the Defendants' arguments that the disenfranchisement provision of

Article II, § 1 of the Constitution of Virginia is constitutionally permissible, El-Amin

proffers numerous documents and raises several arguments.

In regard to the eight exhibits submitted with his memorandum, they appear to be

offered in support of his conclusion that the disenfranchisement provision of Article II,

§ 1, was enacted with a discriminatory intent.   As noted earlier, however, while

Defendants' exhibits were properly offered, and are subject to consideration by this Court

under the guidelines enunciated *supra,* El-Amin's exhibits are not.   Consequently, while

a great deal of El-Amin's memorandum focuses on the content of these exhibits, those

documents and the arguments surrounding them should be stricken and disregarded. They are merely a last ditch effort to buttress improper conclusions in the Complaint that fail to pass muster under *Twombly* and *Iqbal*. At the end of the day, the contents of El-Amin's Complaint are the only relevant "facts" that may be considered in this motion to dismiss.[10]

   With the above in mind, the Defendants' contention is still that El-Amin's Complaint also fails to pass pleading muster under the requirements of *Twombly* and *Iqbal*. El-Amin's Complaint simply fails to allege sufficient facts to make a particular cause of action "plausible."

   In response, El-Amin argues that because former Confederates were not disenfranchised, but felons were, that this establishes the necessary racial animus for his Equal Protection claim. Memo in Opposition, p. 7. Again, one result does not follow from the other. This "conclusion" also ignores the historical record, which El-Amin has conceded in his Complaint. That record establishes that the felony disenfranchisement provision was already present in the 1830 and 1851 versions of the Virginia Constitution. Complaint, ¶¶ 28 and 32. That Virginians had an antipathy to convicted felons such that they believed them unfit to vote, is a historical fact based on the contents of those constitutions. That the disenfranchisement provisions in 1830 and 1851 could only have applied to white men, is also a historical fact. Consequently, since Blacks could not vote,

---

[10] To be clear, the Defendants' citations to A. E. Dick Howard's COMMENTARIES ON THE CONSTITUTION OF VIRGINIA, were not meant to introduce his comments or opinions into evidence. Rather the treatise was only meant to act as a guidepost for this Court in performing its own review of the relevant provisions of the various Virginia Constitutions cited by the Defendants, and as an aid to the Court in determining the content of any given constitutional provision at any given time. While the Court can take judicial notice of those constitutional enactments, it need not pay any heed to any historical "interpretation" that Professor Howard may have imparted in his treatise.

disenfranchising Blacks could not have been a part of the calculus in enacting those provisions at that time.

El-Amin also argues that that the case of *Richardson v. Ramirez*, 418 U.S. 24 (1974), and its progeny are irrelevant to his claims. He states "the claims made by El-Amin are grounded on facts and circumstances which have never been decided by a court of law, either federal or state and therefore this is a case of first impression." Memo in Opposition, pp. 7-8. This assertion provides even more reason for this Court to look extremely cautiously at the allegations in this Complaint in determining whether the "plausibility" test has been met.

Moreover, in an effort to divert the Court's attention from the paucity of legitimate facts supporting his claims, El-Amin attempts to introduce new theories and arguments into this case not justified by, or otherwise found in, the allegations of his Complaint. In one, he suggests that the inclusion of "paupers" as persons being unable to register and vote in the 1870 Constitution was also race based.'" Memo in Opposition, p. 12. In another he alleges that "Virginia has been guilty of selective prosecution based on race which fits within the ambit of El-Amin's claim of denial of equal protection." Memo in Opposition, p. 12. In yet another, he goes so far as to allege that Rule 609 [presumably of the Federal Rules of Evidence, dealing with impeachment of a witness by evidence of criminal conviction] "keep[s] Blacks ensnared in the criminal system, perpetuating the criminalization of a staggering percentage of the Black population." Memo in Opposition, p. 11-12, fn 9.

El-Amin's dramatically broad view of the concept of "cause and effect" and what constitutes support for the claims in his Complaint, should also give this Court pause in assessing whether he has met the pleading standards under *Twombly* and *Iqbal.*

El-Amin also contends that paragraphs 49-56 of his Complaint establish that Article II, § 1, was enacted with a discriminatory intent. Nowhere in those eight paragraphs, let alone in the contents of the entire Complaint, however, does El-Amin allege sufficient facts – rather than conclusions - which establish a plausible claim that the felony disenfranchisement provision of Article II was based on the drafters' intent to disenfranchise Blacks.[11]

Decisively, the final revision of the Virginia Constitution that took place in 1970 breaks the alleged chain of historical causation. That revision demonstrates a clear intention to comply with the United States Constitution and to end discrimination. Not only was Article II, § 1 amended at that time to remove the pauperism disqualification but the poll tax requirement was also removed. Then, the Department of Justice pursuant to its oversight responsibilities under 42 U.S.C. § 1973(c), approved the enactment of the 1970 Constitution. *See* Exhibit 3.

For the above reasons, El-Amin's Count I § 1983 claim challenging his disenfranchisement under Article II, § 1, and premised on a violation of the Equal Protection Clause, fails.

---

[11] *See also, Howard v. Gilmore*, 2000 U.S. App. LEXIS 2680, *2-3 (4th Cir. Va. Feb. 23, 2000)(Unpublished), when in dealing with the same issue raised here, the court stated "[t]he Commonwealth's decision to disenfranchise felons pre-dates the adoption of both constitutional amendments [Fourteenth and Fifteenth] as well as the extension of the franchise to African-Americans . . . Moreover, the Fourteenth Amendment itself permits the denial of the franchise upon criminal conviction . . . Howard has therefore failed to state a claim . . . ." *See also Perry v. Beamer*, 933 F. Supp. 556, 559 (1996)("The Commonwealth of Virginia has long excluded convicted felons from the franchise.").

F.    **Count II - The Restoration Process Does Not Violate Substantive or Procedural Due Process.**

Significantly, El-Amin's response to the Defendants' arguments supporting the constitutionality of the restoration process in Virginia, is to cite to cases arising in the context of a First Amendment challenge, and to a few cases in which El-Amin suggests that "unbridled discretion" by public officials is a bad thing.[12]  None of the cases cited is instructive here.  Moreover, not one case is offered which demonstrates that a Governor or other similar individual or entity, violated a person's rights by failing to approve the restoration of a felon's rights.  Nor is any case cited indicating that the authority to grant a pardon, or commutation, or amnesty, or any similar forbearance, has been deemed to be constitutionally infirm, or misapplied.  Little reason exists, therefore, to further amplify what the Defendants have already stated in this regard.

El-Amin cannot complain of the restoration process, because he has not attempted to utilize it.  Even if he had, the process is constitutionally sound.  This claim should be denied.

G.    **Count III - Reinstatement in Virginia is Neither Capricious or Arbitrary.**

Similarly, El-Amin offers not one case in support of his contention that the restoration process is capricious or arbitrary.  Remarkably, he does allege that "the waiting periods before one is eligible for reinstatement in Virginia are a  subterfuge for voter suppression."  Memo in Opposition, p. 30.  No facts are offered to support that charge.  The allegation is simply made, and left lying on the table.  Again, El-Amin's

---

[12] It is unclear how one of the cases cited, *Crawford v. Bounds*, 395 F.2d 297, 317 (4th Cir. 1968), *vacated by Bounds v. Crawford,* 393 U.S. 76 (1968),  has any application here, as it discusses the "unbridled discretion" of a jury to impose sentence.

tendency to simply "assume" facts, raises questions about the plausibility of his entire case.

To the extent that El-Amin alleges the reinstatement process is capricious and arbitrary, this claim must also fail.

## H.    Count IV - Disenfranchisement is not a Violation of the Eighth Amendment.

Insofar as his claim that Article II, § 1 violates the Eighth Amendment, El-Amin cites to *Solem v. Helm*, 463 U.S. 277 (1983), for the proposition that disenfranchisement for life violates the proportional requirement of sentencing. Memo in Opposition, p. 27. He also argues that lifetime disenfranchisement violates the evolving standards of the Eighth Amendment. *Id.*

Both arguments are for naught. As previously argued, it is questionable at best that the Eighth Amendment even applies in these circumstances. No case cited by El-Amin deals with the application of that amendment to the revocation of a convicted felons right to vote. No case is brought forward showing that the amendment even applies to our situation. In fact, the Supreme Court case of *Trop v. Dulles*, 356 U.S. 86 (1958), cited by the Defendants in their prior memo, would seem to suggest otherwise.

Moreover, El-Amin's reliance on the concept of "proportionality" has been since rejected by the Supreme Court. As noted by the Supreme Court in *Harmelin v. Mich.*, 501 U.S. 957 (1991), in commenting on its earlier *Solem* decision:

> our 5-to-4 decision eight years ago in Solem was scarcely the expression of clear and well accepted constitutional law. We have long recognized, of course, that the doctrine of stare decisis is less rigid in its application to constitutional precedents . . . and we think that to be especially true of a constitutional precedent that is both recent and in apparent tension with other decisions. Accordingly, we have addressed anew, and in greater detail, the question whether the Eighth Amendment contains a proportionality guarantee -- with particular attention to the background of

> the Eighth Amendment (which Solem discussed in only two pages, see
> 463 U.S. at 284-286) and to the understanding of the Eighth Amendment
> before the end of the 19th century (which Solem discussed not at all). We
> conclude from this examination that Solem was simply wrong; the Eighth
> Amendment contains no proportionality guarantee.

*Id.* at 965.

Insofar as the evolving standards of the Eighth Amendment are concerned, that argument may have traction in the criminal sentencing context, however, El-Amin can point to no case applying it under circumstances like those here. As importantly, the revocation of the right to vote is not a transitory consequence that may fall out of fashion and become suspect by its non-use. Rather, it is a recognized and accepted consequence of criminal behavior sanctioned by no less than § 2 of the Fourteenth Amendment. Whatever may be said of passing mores, and evolving standards, the Constitution of the United States still recognizes that States may limit convicted felons' rights to vote. In that light, Virginia is not a sole outlier imposing this status alone on its citizens. Rather, it is but one of many states that provide for such revocation. Even if the Eighth Amendment were to apply, no facts and no legitimate rationale have been presented to show a violation of that Amendment.

For the foregoing reasons, Count IV of the Complaint in which El-Amin challenges Virginia's disenfranchisement scheme under the Eighth Amendment, must also be dismissed

## I.   Request For Attorneys Fees Pursuant To 42 U.S. § 1988.

Finally, El-Amin chooses to defer a response on this issue, before making a decision as to whether to apply for attorneys fees. Memo in Opposition, p. 31. He thereby concedes Defendants' arguments.

El-Amin's claim for fees should therefore be dismissed as well.

15

WHEREFORE, for the above entitled reasons, the Defendants respectfully request that this Court dismiss Plaintiff's Complaint.

Respectfully submitted,

COMMONWEALTH OF VIRGINIA
GOVERNOR ROBERT F. McDONNELL
SECRETARY OF THE COMMONWEALTH,
JANET VESTAL KELLY

By: _____/s/_____
George W. Chabalewski
Virginia State Bar Number 27040
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Telephone: (804) 692-0598
Fax: (804) 371-2087
E-mail: gchabalewski@oag.state.va.us

Kenneth T. Cuccinelli, II
Attorney General of Virginia

Patricia L. West
Chief Deputy Attorney General

Wesley G. Russell, Jr.
Deputy Attorney General

Peter R. Messitt
Senior Assistant Attorney General

*George W. Chabalewski
Senior Assistant Attorney General
Virginia State Bar Number 27040

*Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of September 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

Sa'ad El-Amin, pro se
24 Overbrook Road
Richmond, Virginia 23222

By: _____/s/_____
    George W. Chabalewski
    Virginia State Bar Number 27040
    Attorney for the above Defendants
    Office of the Attorney General
    900 East Main Street
    Richmond, Virginia  23219
    Telephone: (804) 692-0598
    Fax: (804) 371-2087
    E-mail: gchabalewski@oag.state.va.us