IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

SA'AD EL-AMIN,

          Plaintiff,

v.                                                    Case No. 3:12-cv-00538-JAG

ROBERT F. McDONNELL,
JANET VESTAL KELLY,
CHARLIE JUDD,
KIMBERLY BOWERS,
and DON PALMER,

          Defendants.

**MEMORANDUM OPINION**

THIS MATTER is before the Court on the defendants' motion to dismiss. The plaintiff has sued the three individual members of the Virginia State Board of Elections in their official capacity, Governor Robert F. McDonnell, and Janet V. Kelly, Secretary of the Commonwealth.[1] The plaintiff brings four separate claims, alleging:[2] (1) disqualifying felons from voting, as Article II, Section 1 of the Virginia Constitution does, violates the Equal Protection Clause of the Fourteenth Amendment because it discriminates against black citizens while favoring those who commit crimes but avoid prosecution as felons; (2) Virginia's voter reinstatement process for

---

[1] The plaintiff stipulated to the dismissal of defendant J. Kirk de Courcey Showalter, Registrar of the City of Richmond. Ms. Showalter is therefore no longer a party to this action. In addition, the Court previously dismissed all claims directly against the Commonwealth of Virginia due to Eleventh Amendment immunity. See Part III.D., *infra*.

[2] The plaintiff states generally that he brings this action under 42 U.S.C. §§ 1973, *et seq.* (Voting Rights Act of 1965), § 1983, and § 1988, and the Eighth, Fourteenth, and Fifteenth Amendments of the U.S. Constitution. Am. Compl. ¶ 7. He does not, however, make any allegations supporting a claim under the Voting Rights Act. Consequently, the Court will treat Counts I through IV as claims under 42 U.S.C. § 1983 to vindicate the various constitutional rights that state officials have allegedly violated.

felons, which gives the Governor of Virginia unfettered authority to decide which applications to approve or deny, violates substantive and procedural due process; (3) this reinstatement process is capricious and arbitrary and thus violates the Fourteenth Amendment; and (4) the disenfranchisement of felons constitutes cruel and unusual punishment in violation of the Eighth Amendment. The plaintiff asks the Court to issue a declaratory judgment confirming his legal allegations, to enjoin the defendants from denying the plaintiff's right to register to vote, and to award attorneys' fees, expenses, and costs.

The Court denies the defendants' motion to dismiss in part and grants the motion in part. The first claim cannot be dismissed because the intent of the Commonwealth of Virginia ("the Commonwealth") in depriving felons of their voting rights—the critical consideration in the plaintiff's equal protection claim—is an issue that the Court cannot resolve at this stage of the litigation. The Court must, however, dismiss the remaining counts. Counts II and III fail because the plaintiff, who admittedly chose *not* to seek reinstatement, lacks standing to bring a due process challenge to the Commonwealth's felon reinstatement procedure. Finally, felon disenfranchisement does not violate the Eighth Amendment, so Count IV also merits dismissal. In sum, the only claim to proceed will be Count I, dealing with whether Article II, Section I of the Virginia Constitution violates the Equal Protection Clause.[3]

### I.    STATEMENT OF FACTS

The plaintiff, Sa'ad El-Amin, is a resident of Richmond, Virginia and a convicted felon. Prior to his conviction, El-Amin served as a Richmond City Council member, representing the Sixth District. In July 2003, El-Amin pleaded guilty to conspiracy to attempt to evade or defeat tax pursuant to 18 U.S.C. § 371. A federal court sentenced El-Amin to thirty-seven months of

---

[3] The plaintiff moved for summary judgment on all claims. The Court orally denied the plaintiff's motion for failure to produce sufficient evidence in support of the motion.

2

imprisonment and three years of supervised release in October 2003. El-Amin was released from prison in May 2006 and completed his supervised release on August 8, 2009.

Article II, Section I of the Virginia Constitution states, "No person who has been convicted of a felony shall be qualified to vote unless his civil rights have been restored by the Governor or other appropriate authority." VA. CONST. art. II, § 1. In keeping with standard practice, following El-Amin's conviction, a Richmond election official struck his name from the Virginia qualified voter list, rendering him ineligible to vote for the remainder of his life—unless he pursues reinstatement. Virginia's criteria for restoration specify that non-violent felons must be free from any prison sentence, supervised release, parole, misdemeanor convictions, and pending criminal charges for a minimum of two years before seeking reinstatement. El-Amin has incurred no new criminal charges since the two-year period following his supervised release expired in August 2011. Accordingly, he became eligible to seek restoration of his voting rights at that time. El-Amin recognizes that he meets the criteria necessary to file a restoration petition but admits that he has not done so. He steadfastly refuses to seek reinstatement based on his view that disenfranchisement, in the first instance, violates the U.S. Constitution.

## II. STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a claim and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). When considering a motion to dismiss, the Court must accept all the complainant's factual allegations as true and resolve factual differences in that party's favor. *See De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). Nevertheless, the Court need not accept the complainant's legal conclusions or any other unreasonable or unwarranted arguments as true. *Giarratano v.*

3

*Johnson*, 521 F.3d 298, 302 (4th Cir. 2008); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). In addition, the complainant must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to overcome a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255–56 (4th Cir. 2009).

### III. DISCUSSION

*A. Count I Cannot Be Dismissed Because El-Amin Has Alleged Sufficient Facts To State A Claim For Violation Of The Equal Protection Clause Of The Fourteenth Amendment*

In his first claim, El-Amin argues that the Commonwealth adopted Article II, Section 1 of its Constitution in order to suppress the black vote. The central inquiry in evaluating this claim is whether Virginia enacted its felony disenfranchisement provision with the intent to discriminate against black citizens, as El-Amin alleges, or whether it was it adopted for a legitimate reason, as the defendants argue. *Johnson v. Governor of State of Florida*, 405 F.3d 1214, 1218 (11th Cir. 2005) (en banc) ("[T]he Equal Protection Clause prohibits a state from using a facially neutral law to *intentionally* discriminate on the basis of race. This includes a criminal disenfranchisement law enacted with the intent to deprive one racial group of its right to participate in the political process.") (emphasis in original) (citing *Hunter v. Underwood*, 471 U.S. 222, 233 (1985); *Washington v. Davis*, 426 U.S. 229, 239–40 (1976)).

Intent is a legal concept, which, in this case, depends entirely on the facts and circumstances surrounding Virginia's adoption of its constitutional provision. *See, e.g., Johnson*, 405 F.3d at 1218 ("Because the plaintiffs' Equal Protection claim hinges on [Florida's] 1868 criminal disenfranchisement provision, we must examine the historical context in which that provision was adopted."); *see also Hunter*, 471 U.S. at 228–31 (analyzing the historical context

in which Alabama's 1901 felon disenfranchisement provision was enacted). Though federal courts have previously rejected challenges to Article II, Section 1, this Court is aware of no previous case in which a court has looked specifically at the historical events that El-Amin offers to support his claim.[4] This means that the Court must actually permit El-Amin an opportunity to produce evidence and evaluate the evidence that he produces, which it cannot do at the motion to dismiss stage. *See Buckner v. Schaefer*, 991 F.2d 787, 1993 WL 128020, at *2 (4th Cir. Apr. 23, 1993) (vacating district court's dismissal of the plaintiff's challenge to felon disenfranchisement under Maryland law based on its recognition of the "possibility, however remote," that the plaintiff could prevail). Accordingly, the Court denies the motion to dismiss as to Count I.

The defendants incorrectly argue that El-Amin's claim is precluded by Supreme Court and Fourth Circuit precedent. In *Richardson v. Ramirez*, the Supreme Court ruled that "the exclusion of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment." 418 U.S. 24, 54 (1974). And as both the *Richardson* Court and other lower courts have repeated, "[T]hose who framed and adopted the Fourteenth Amendment could not have intended to prohibit outright in § 1 of that Amendment [*i.e.*, the Equal Protection Clause] that which was expressly exempted [*i.e.*, criminal disenfranchisement] from the lesser sanction of reduced representation imposed by § 2 of the Amendment." *Id.* at 43. But these conclusions only address whether felon disenfranchisement is constitutional in the abstract. The Supreme Court's decision in *Hunter v. Underwood* demonstrates that a specific state provision, such as

---

[4] This Court briefly addressed the origins of Article II, Section 1 in a previous case, but it considered no events past the ratification of the Fourteenth Amendment in 1868. *See Perry v. Beamer*, 933 F. Supp. 556, 559 (E.D. Va. 1996) (Doumar, J.), *aff'd*, 99 F.3d 1130, 1996 WL 614688 (4th Cir. 1996). One of El-Amin's main arguments centers on the re-adoption of the felon disenfranchisement provision during the 1870 Virginia Constitutional Convention. Given that El-Amin raises different evidence from that discussed in *Perry*, automatic dismissal, without any development of the factual record, would be inappropriate.

Alabama's 1901 felon disenfranchisement provision, may still be held unconstitutional because racial discrimination was a "was a substantial or motivating factor" in its adoption. *Hunter*, 471 U.S. at 225; *see also Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 270 and n.21 (1977). In other words, a facially neutral law whose true purpose (and whose effect) is discrimination violates the Equal Protection Clause[5] every bit as much as a facially discriminatory law. *See Washington*, 426 U.S. at 241 ("A statute, otherwise neutral on its face, must not be applied so as invidiously to discriminate on the basis of race."). For this reason, the Fourth Circuit's admonition that *Richardson* "closed the door on the equal protection argument in a challenge to state statutory voting disqualifications for convictions of crime" does not tell the whole story. *Allison v. Ellisor*, 664 F.2d 391, 395 (4th Cir. 1980) (en banc). Even in that case, in fact, the Fourth Circuit assessed whether a South Carolina statute, though "facially valid," was "racially tainted." *Id.* at 399. And only in 2005 did the Eleventh Circuit consider an equal protection challenge to Florida's felon disenfranchisement law. *See generally Johnson v. Governor of State of Florida*, 405 F.3d 1214 (11th Cir. 2005) (en banc).

In this case, El-Amin argues, first and foremost, that the adoption of Article II, Section 1 at the 1870 Virginia Constitutional Convention was tinged by racial animus. Specifically, he contends that that disenfranchisement of felons was maintained (and the scope of covered offenses expanded) while the disenfranchisement of former Confederates was eliminated in order to disproportionately deprive black citizens of their voting rights. He further supports this theory

---

[5] All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, §1.

with comments made during the Virginia Constitutional Convention of 1901–02, during which the felon disenfranchisement provision was adopted anew. During convention debates, El-Amin alleges that Delegate Carter Glass spoke approvingly of the fact that the provision would drastically reduce the black vote while not having the same effect on white citizens. No one apparently took exception to these remarks or sought to repudiate them. Throughout his pleadings, he offers a smattering of other allegations as well.

On the other hand, the defendants argue that because felon disenfranchisement provisions already existed in the 1830 and 1851 Virginia Constitutions, when only white men could vote, the plaintiff's arguments necessarily fail. The defendants also argue that because the Virginia Constitution was amended in 1970, El-Amin lacks a chain of causation between the allegedly discriminatory provisions and disenfranchisement in the present day. But, in fact, very similar circumstances existed in Florida, which first disenfranchised criminals in 1838 and readopted the law as part of its revised constitution in 1968. *See Johnson*, 405 F.3d at 1218–21. Such historical circumstances did not prevent the Eleventh Circuit from deciding whether the state's *1868* felon disenfranchisement provision violated the Equal Protection Clause. *See id.* It did so once the parties filed summary judgment motions and submitted evidence, which is the appropriate time to determine whether the parties' historical arguments stand up to scrutiny and what weight to afford them. The defendants' attempt to short-cut this process is unavailing.

On an equal protection claim, in addition to discriminatory intent, a plaintiff must show disparate effect. *Hunter*, 471 U.S. at 228; *Washington*, 426 U.S. at 239. El-Amin supports his claim by providing statistics indicating that Virginia's felon disenfranchisement provision disproportionately affects African-Americans. For instance, nearly half of all inmates in state or federal prisons and local jails are non-Hispanic Blacks, despite the fact that their proportion of

the overall population is much smaller. He also offers various other figures, and, though the defendants urge caution in "accepting these 'facts' at face value," they do not show them to be palpably unreasonable. Defs.' Mem. Supp. Mot. to Dismiss 2 n.3. In short, El-Amin has alleged both discriminatory intent and disparate impact, and he has pleaded sufficient facts to state a claim for violation of the Equal Protection Clause. This conclusion has nothing to do with the claim's ultimate likelihood of success, on which the Court expresses no view. It instead has to do with the basic reality that the Court may not weigh evidence at the motion to dismiss stage, which is, in effect, what the defendants seek. For these reasons, the Court denies the motion to dismiss as to El-Amin's equal protection claim.

### B. *El-Amin Lacks Standing To Challenge Virginia's Reinstatement Process Because He Has Not Been Denied Reinstatement*

In Counts II and III, respectively, El-Amin alleges that the Governor's reinstatement process violates substantive and procedural due process and, further, that the process is capricious and arbitrary. In Virginia, a successful petition for reinstatement restores one's rights to vote, to run for and hold public office, to serve on juries, and to serve as a notary public. One must, however, apply directly to the Governor for reinstatement, and the latter retains complete discretion to grant or reject a petition. An individual whose petition is rejected has no right of appeal; the only recourse is reapplication after a one-year waiting period.

The defendants correctly object to El-Amin's claims on the basis that he has failed to seek reinstatement through the process in its current form, thus leaving him without standing to challenge his lack of restoration. The Court therefore has no choice but to dismiss these claims.

A plaintiff must satisfy a three-part test in order to establish standing:

(1) [the party] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to

the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *accord Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 231 (4th Cir. 2008)).

Here, El-Amin lacks standing to challenge the reinstatement process because he has suffered no "injury in fact." In his mind, El-Amin has standing because (a) he currently meets the criteria for reinstatement, (b) "his disenfranchisement is without a doubt, an injury in fact," and (c) there exists a "causal connection between his continued disenfranchisement which is connected or traceable to the procedures which the defendant Governor has set up for reinstatement of voting rights." Pl.'s Mem. Opp. Defs.' Mot. to Dismiss 24–25. These contentions are insufficient to satisfy the standing requirement. While El-Amin is correct that Virginia has deprived him of his voting rights, this injury permits him only to challenge the *deprivation itself*, which he does in Count I. Since he has not applied for restoration of his voting rights, he has suffered no denial, or other injury, that would allow him to challenge the *reinstatement process* as well. *See Doe v. Virginia Dept. of State Police*, 2011 WL 2551014, at *6–7 (E.D. Va. June 27, 2011). El-Amin conflates two separate standing inquiries, and he has failed to satisfy the relevant one for these claims.[6] He cannot proceed on his challenges to

---

[6] El-Amin alternatively argues that the Court should apply the Utah Supreme Court's less stringent standing requirements to his case. *See Nat'l Parks & Conservation Assn. v. Bd. of State Lands*, 869 P.2d 909, 913 (Utah 1993) ("Standing may . . . be established for important 'public issues' if 'no one else has a greater interest in the outcome[,] the issues are unlikely to be raised at all unless that particular plaintiff has standing to raise the issues,' and the legal issues are sufficiently crystallized to be subject to judicial resolution."); *but see Utah Chap. of Sierra Club v. Utah Air Quality Bd.*, 148 P.3d 960, 973 (Utah 2006) (disagreeing with *National Parks*' interpretation of *Jenkins v. Swan*, 675 P.2d 1145 (Utah 1993)). The Utah Supreme Court also

Virginia's reinstatement process, and the Court accordingly dismisses Count II and III. If, at some point in the future, he seeks restoration and the Commonwealth does indeed deny his petition, he may be able to state a claim for violation of his due process rights. Until then, however, this Court lacks the authority to hear these claims.

### C. *Disenfranchisement Of Convicted Felons Does Not Violate The Eighth Amendment*

El-Amin lastly alleges in Count IV that the disenfranchisement of convicted felons constitutes "cruel and unusual punishment" and thus violates the Eighth Amendment of the U.S. Constitution. The Eighth Amendment provides: "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. Over the years, various plaintiffs have raised this argument, but to this Court's knowledge it has never won the day. In keeping with this long line of decisions, the Court dismisses El-Amin's Eighth Amendment claim as well.

As the Second Circuit concluded long ago, "[d]epriving convicted felons of the franchise is not a punishment but rather is a 'nonpenal exercise of the power to regulate the franchise.'" *Green v. Bd. of Elections*, 380 F.2d 445, 450 (2d Cir. 1967) (quoting *Trop v. Dulles*, 356 U.S. 86, 97 (1958)). And if felon disenfranchisement does not constitute "punishment," by definition, it does not constitute cruel and unusual punishment.

Regarding the regulatory character of disenfranchisement, the Second Circuit explained:

> The early exclusion of felons from the franchise by many states could well have rested on Locke's concept, so influential at the time, that by entering into society every man 'authorizes the society, or which is all one, the legislature thereof, to make laws for him as the public good of the society shall require, to the execution whereof his own

---

articulated an alternative test for standing, which a plaintiff establishes when he raises issues "so unique and of such great importance that they ought to be decided in furtherance of the public interest." *Nat'l Parks & Conservation Assn.*, 869 P.2d at 913. As this Court sits in the Fourth Circuit and must apply federal standing doctrine, Utah's position on this matter, even if indeed more plaintiff-friendly, carries no weight.

assistance (as to his own decrees) is due.' A man who breaks the laws he has authorized his agent to make for his own governance could fairly have been thought to have abandoned the right to participate in further administering the compact. On a less theoretical plane, it can scarcely be deemed unreasonable for a state to decide that perpetrators of serious crimes shall not take part in electing the legislators who make the laws, the executives who enforce these, the prosecutors who must try them for further violations, or the judges who are to consider their cases. This is especially so when account is taken of the heavy incidence of recidivism and the prevalence of organized crime.

*Green*, 380 F.2d at 451 (quoting John Locke, *An Essay Concerning the True Original, Extent and End of Civil Government* 89 (1690)). Following similar logic, other courts have found that taking away a felon's right to vote is not punitive in character.[7] And even if one questions whether disenfranchisement serves to regulate the franchise rather than tack on additional punishment, "the great number of states excluding felons from the franchise forbids a conclusion that this is a 'cruel and unusual punishment' within the context of 'evolving standards of decency that mark the progress of a maturing society.'" *Id.* at 451 (citing *Trop*, 356 U.S. at 101).

It is true that Virginia is one of only four states—along with Florida, Iowa, and Kentucky—that require individual felons to file actual applications to have their voting rights restored. In the vast majority of states, once a felon completes his or her imprisonment and any period of parole and/or probation, that person's voting rights automatically return. That said, if the only differences between the Commonwealth and a sizeable group of other states are that a

---

[7] *See, e.g., King v. City of Boston*, 2004 WL 1070573, at *1 (D. Mass. May 13, 2004) (finding felon disenfranchisement statute not to be punitive); *Fernandez v. Kiner*, 673 P.2d 191, 193 (Wash. Ct. App. 1983) ("The statute disenfranchising convicted felons is sustained as a nonpenal exercise of the power to regulate the franchise."); *Mixon v. Commonwealth*, 759 A.2d 442, 448 (Pa. Commw. Ct. 2000) (noting in dictum that "[m]odern thought perceives disenfranchisement of convicted felons, not as punishment, but rather as a 'nonpenal exercise of the power to regulate the franchise.'") (quoting *Trop*, 356 U.S. at 97), *aff'd*, 783 A.2d 763 (Pa. 2001).

person in Virginia must meet certain basic and eminently reasonable criteria for eligibility,[8] and file a straightforward petition for reinstatement,[9] this Court cannot conclude that its application process renders its felon disenfranchisement provision cruel and unusual.[10]

Within this circuit, other district courts have likewise found that disenfranchisement does not violate the Eighth Amendment. *See Thiess v. State Admin. Bd. of Election Laws*, 387 F. Supp. 1038, 1042 (D. Md. 1974) (holding disenfranchisement not to constitute "punishment so grossly disproportionate to the crime as to be proscribed by the Eighth Amendment"); *Fincher v. Scott*, 352 F. Supp. 117, 120–21 (M.D.N.C. 1972) (finding the plaintiff's Eighth Amendment arguments "without merit" based on the number of states that disenfranchised felons both at the time of the Fourteenth Amendment's ratification and at the time of the instant lawsuit). As the *Thiess* court stated, "[I]t may be that modern legislators should conclude that the concept of disenfranchisement is 'outmoded, and that the more modern view is that it is essential to the process of rehabilitating the ex-felon that he be returned to his role in society as a fully participating citizen when he has completed the serving of his term.'" 387 F. Supp. at 1042 (quoting *Richardson v. Ramirez*, 418 U.S. 24, 55 (1974)). But, because a consensus persists among legislatures throughout the country that felon disenfranchisement remains a prudent regulation of the franchise, and because the Commonwealth has not imposed burdensome

---

[8] As stated above, Virginia's criteria for restoration specify that non-violent felons must be free from any prison sentence, supervised release, parole, misdemeanor convictions, and pending criminal charges for a minimum of two years before seeking reinstatement.

[9] *See* Virginia Restoration of Civil Rights Application Form for Non-Violent Offenders, *available at* http://www.commonwealth.virginia.gov/judicialsystem/clemency/McDonnell2-YearRoRApplication-Latest92010.pdf (last accessed Feb. 5, 2013).

[10] The Court notes that the Governor of Virginia has used his executive power to streamline and speed up the process of restoring civil rights to felons, and has urged the General Assembly to adopt laws making the process easier. *See* Governor McDonnell Delivers 2013 State of the Commonwealth Address, available at
http://www.governor.virginia.gov/news/viewRelease.cfm?id=1591 (last accessed Feb. 5, 2013).

conditions on reinstatement, this Court is in no position to find that Article II, Section 1 of the Virginia Constitution violates the Eighth Amendment. Accordingly, the Court dismisses El-Amin's Eighth Amendment claim.

### D. Eleventh Amendment Immunity Bars El-Amin's Suit Against The Commonwealth, But The Remaining Defendants Are Proper Parties To This Suit

In a previous order, the Court dismissed El-Amin's claims directly against the Commonwealth due to Eleventh Amendment immunity. The Eleventh Amendment reads, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. This amendment prevents lawsuits directly against states, regardless of whether a plaintiff seeks relief in the form of money damages or, as El-Amin requests, a form of equitable relief. *See Ex Parte Young*, 209 U.S. 123 (1908); *Hans v. Louisiana*, 134 U.S. 1 (1890); *see also Missouri v. Fiske*, 290 U.S. 18, 21 (1933) ("Expressly applying to suits in equity as well as at law, the amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a state."). Consequently, the Court dismissed all claims against the Commonwealth, but Governor McDonnell and Secretary Kelly now argue that the Eleventh Amendment bars suit against them as well.[11]

These defendants are, however, proper parties to this action. Pursuant to *Ex Parte Young*, a court may award injunctive relief against a state officer acting in his or her official capacity following a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v.*

---

[11] During oral argument, the Commonwealth's Solicitor General stated expressly that the members of the State Board of Elections would be the proper defendants in this matter, so the Court need not consider whether the Eleventh Amendment renders them immune to suit.

13

*Pub. Serv. Com'n of Maryland*, 535 U.S. 635, 645 (2002); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001) ("Under the *Ex parte Young* exception, a suit in federal court to enjoin a state officer from enforcing an unconstitutional statute is not a suit against the state for purposes of the Eleventh Amendment."). Because El-Amin aims to prevent the Commonwealth's executive officers from enforcing Article II, Section I of the Virginia Constitution, his sought-after relief is quite "properly characterized as prospective." *Id.*

Still, the defendants argue, "*Ex parte Young* requires a 'special relation' between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar. 'General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law.'" *Waste Mgmt. Holdings*, 252 F.3d at 331 (citations omitted). Though true, this fact does not insulate the Governor or Secretary of the Commonwealth from lawsuits relating to felon disenfranchisement. *See, e.g., Johnson*, 405 F.3d 1214 (hearing case against the Governor and Secretary State of Florida based on the plaintiffs' Voting Rights Act and equal protection claims stemming from the state's felon disenfranchisement law). The Court has already addressed the Governor's unique role in changing the reinstatement process. *See* Part III.C. n.10, *supra*. The Court now takes judicial notice of Secretary Kelly's management role in connection with the same.[12] On the record before the Court, it appears that the Governor and Secretary bear a "special relation" to the challenged law. Accordingly, the Court will not dismiss El-Amin's sole remaining claim, dealing with equal protection, as to Governor McDonnell and Secretary Kelly.

---

[12] *See* Biography of Janet Vestal Kelly, Secretary of the Commonwealth, *available at* http://www.commonwealth.virginia.gov/SecInfo/Bio.cfm (last accessed Feb. 5, 2013) ("As Secretary, [Ms. Kelly] has also managed the historic reforms of the restoration of rights process.").

## IV. CONCLUSION

For the reasons set forth above, the Court denies the defendants' motion to dismiss in part and grants the motion in part.

The Court shall enter an appropriate order.

Date: March 22, 2013
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge